UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

WYKEYA WILLIAMS and LAMONT WILBERT HANNAH, individually and in Their own right, and as Parents and Natural Guardians on behalf of L.H. (a Minor Son) and L.H. (a Minor Daughter)

    Plaintiffs,

FIRST STUDENT, INC.,

    Defendant.

CIVIL ACTION NO.: 1:20-cv-001176

---

## PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE DRAFT REPORT OF DEFENDANT FIRST STUDENT, INC'S TESTIFYING EXPERT ADAM CYBANSKI

### I.  INTRODUCTION

1.  Plaintiffs file this Motion regarding First Student's intentional and unlawful suppression of a draft report authored by defendant expert Adam Cybanski.

2.  To date, First Student has not only refused to produce said draft report in light of discovery requests, Fed. R. Civ. P. 26 and the Court's order requiring disclosure of an expert's complete file prior to the deposition, but has also instructed expert Cybanski to not answer any questions under oath regarding said report. First Student's instruction of expert Cybanski to not answer questions during his deposition is a blatant violation of the federal rules and further evidence of First Student's intentional effort to suppress highly relevant and discoverable information.

3.  First Student retained Adam Cybanski to testify concerning the location and movements of the Minor Plaintiffs prior to the collision. First Student also retained Stephen Emolo

1

to provide standard of care opinions based on the location and movements of the Minor Plaintiffs. In order to reach this standard of care determination, expert Emolo testified that he required and relied upon the opinions generated by expert Cybanski. At his deposition, expert Emolo acknowledged that if expert Cybanski's conclusions were wrong, then his opinion would likewise be incorrect. Importantly, because expert Emolo's conclusions are dependent on expert Cybanski's opinions, the extent to which expert Emolo influenced expert Cybanski's findings is highly relevant to the defendant expert's objectivity in this matter. Indeed, and unbeknownst to Plaintiffs, the evidence to date is supportive that expert Cybanski coordinated with expert Emolo before either expert issued their final report. The evidence includes but is not limited to the fact that both experts withheld the draft report from their files and that expert Emolo was untruthful about the existence of said report when questioned about the same in his deposition. Prior to their depositions, neither experts' files contained, mentioned or referenced the draft report. To that end, expert Emolo flatly denied the existence of such while expert Cybanski, in contrast, admitted to the existence of said draft report within the first fifteen minutes of his deposition. Expert Cybanski's admission became the first concrete proof of the existence of the evidence at issue.

4.   Although production of this draft report was required under numerous rules, it has to date nonetheless been withheld by First Student. More importantly, First Student instructed expert Cybanski at his deposition not to answer any additional questions of this draft report, including but not limited to the creation, the content, and dissemination thereof. This instruction not to answer has further prevented Plaintiffs to date from inquiring about the extent to which expert Emolo materially participated in or influenced expert Cybanski's work and opinions. Now First Student refuses to produce the draft report[1] and corresponding communications and continues

---

[1] First Student recently sought disclosure of a consulting report for a life care plan from Plaintiffs' consulting expert, Valerie Parisi, claiming in its request that it had "**the right** to any and all reports, documents and materials of Ms.

2

to hide the evidence of coordination between these two expert's opinions, by which expert Cybanski could ensure in advance that his report would support expert Emolo's eventual conclusions.

5. Accordingly, Plaintiffs respectfully move the Court to enter an Order compelling Defendant First Student, Inc. as follows:

   a. To produce the draft report of First Student's testifying expert, Adam Cybanski, and corresponding communications because Mr. Cybanski testified at his deposition that he provided the draft report to another testifying expert, Stephen Emolo, and Mr. Emolo testified that he read the draft report. Fed. R. Civ. P. 26(b)(4)(B) protects draft expert reports provided to counsel and attorney-expert communications, but the rule does not protect draft reports and communications provided to someone other than counsel resulting in waiver of any privileges protecting work-product or draft reports. Absent any privilege, Fed. R. Civ. P. 26(a)(2)(B)(ii) states that testifying experts must disclose the "facts or data considered" in forming their opinions;

   b. To present Mr. Cybanski and Mr. Emolo for deposition again after the production of Mr. Cybanski's draft report and corresponding communications with Mr. Emolo; and

   c. Sanctioning First Student for the time, costs and expenses incurred in taking the Mr. Cybanski's 9/9/22 deposition, filing this motion to compel, and re-deposing the

---

Parisi related to this matter" without regard to Plaintiffs' assertions of privilege because two of Plaintiffs' testifying experts reviewed Ms. Parisi's report prior to issuing their final report. Plaintiffs ultimately produced the report. First Student now takes the opposite and untenable position that Plaintiffs do not have **the right to** the draft report that was reviewed and considered by its own testifying expert.

witnesses.

## II.  BACKGROUND

6.  Pursuant to the Notice of Deposition and this Court's Scheduling Order, First Student was required to produce Mr. Cybanski and Mr. Emolo's complete expert file. *See* Ex. 1- Emolo NOD; Ex. 2- Cybanski NOD; and Ex. 3- July 13, 2022 Amended Scheduling Order. This would include *inter alia* all facts and data considered and reviewed by the experts in forming their opinions such as draft reports of other testifying experts that they may have received. The Notices of Deposition also requested all correspondence and electronic communications generated and/or received by the experts and their offices, such as correspondence between the experts and emails containing any draft reports of other testifying experts. *See* Ex. 1- Emolo NOD at Topic 15; *see* Ex. 2- Cybanski NOD at Topic 13.

7.  During the deposition of Mr. Cybanski, First Student's testifying expert who analyzed the school bus surveillance video, First Student improperly prevented Plaintiffs from asking relevant questions regarding a draft expert report that Mr. Cybanski provided to First Student's testifying accident reconstruction expert, Mr. Emolo, for review and analysis. *See* Ex. 4- Deposition of Adam Cybanski at p. 11:3-12:23. Importantly, Mr. Emolo previously testified at his deposition that he relied on the facts and data provided by Mr. Cybanski and that he received and reviewed Mr. Cybanski's draft report.[2] *See* Ex. 5- Deposition of Emolo at p. 204:3-18; p. 261:1-6; and p. 261:23-263:16. When questioned on the draft report, First Student improperly instructed Mr. Cybanski not to answer and deprived Plaintiffs the opportunity to discover relevant information regarding the facts and data that First Student's experts reviewed and considered in forming their opinions.

---

[2] As discussed in further detail in the Argument section, Mr. Emolo provided conflicting testimony that he read a draft report from Mr. Cybanski, but then subsequently testified that he only read the final report.

4

8.  Plaintiffs' line of questioning regarding Mr. Cybanski providing a draft report to another designated expert was a fundamental foundational question which First Student did not allow to be answered. The line of questioning regarding the draft report was foundational on how Mr. Cybanski received his facts, where he received them, and how Mr. Emolo may have influenced Mr. Cybanski's opinions and final report. The ultimate issue Plaintiffs were trying to discover was whether or not Mr. Emolo materially participated and/or influenced the creation of Mr. Cybanski's report.

9.  Further, First Student's improper instruction and vehement refusal to produce Mr. Cybanski's draft report and corresponding communications with Mr. Emolo's office obstructed Plaintiffs from uncovering relevant evidence for the purposes of either impeaching Mr. Emolo or establishing that Mr. Emolo committed perjury. Specifically, Mr. Emolo provided conflicting testimony that he may have received the draft report electronically prior to reviewing it but then subsequently testified that he never received nor read anything other than Mr. Cybanski's final report. Despite testimony that Mr. Emolo relied on the facts and data provided by Mr. Cybanski as well as testimony that Mr. Emolo received and reviewed Mr. Cybanski's final report and a draft report, First Student failed to provide the draft report and related communications as part of the experts' files as required by this Court's July 13, 2022 Amended Scheduling Order.

10. As such, Plaintiffs seek an Order from this Court compelling First Student to produce Mr. Cybanski's draft report and corresponding communications with Mr. Emolo as previously required by the Court; compelling First Student to present Mr. Cybanski and Mr. Emolo for deposition again; and sanctioning First Student for the costs and expenses incurred in taking the deposition, filing this motion to compel, and re-deposing the witnesses.

### III.     ARGUMENT

**A.     First Student Intentionally Obstructed Plaintiffs from Obtaining Discoverable Evidence. Mr. Cybanski Provided a Draft Report to Another Designated Expert, Mr. Emolo, for his Review and Consideration, and Therefore Should Have Been Disclosed.**

11.     First Student improperly obstructed Plaintiffs from obtaining relevant and discoverable information when it instructed Mr. Cybanski not to answer questions regarding the draft report based on the incorrect assertion of work-product and the draft report privilege under Fed. R. Civ. P. 26(b)(4)(B).

12.     FRCP 26(a)(2)(B) provides that an expert witness' written report must contain, *inter alia*, (i) a complete statement of all opinions the witness will express and the basis and reasons for them; and (ii) **the facts or data considered by the witness** in forming them. Fed. R. Civ. P. 26(a)(2)(B). New Jersey federal courts have held that the refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. *In re Benicar (Olmesartan) Products Liab. Litig.*, 319 F.R.D. 139, 140 (D.N.J. 2017). At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. *Id*. **The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert**. *Id*. (Emphasis added).

13.     The 2010 amendment to Fed. R. Civ. P. 26 provided work-product protection to draft expert reports and communications between the testifying expert and counsel; however, the amendment did not alter the broad definition of "considered." *Fialkowski v. Perry*, C.A. No. 11-5139, 2012 WL 2527020, at *3 (D.N.J. June 29, 2012); *see also* Rule 26(b)(4)(C); *In re Benicar (Olmesartan) Products Liab. Litig.*, 319 F.R.D. at 140. In other words, an expert's draft report

6

provided to counsel and related communications with counsel are privileged and protected from disclosure as a general rule, but the amendment does not protect communications between the expert and someone other than counsel, such as another expert. *Fialkowski*, C.A. No. 11-5139, 2012 WL 2527020, at *3; *see also* Rule 26(b)(4)(C); *In re Benicar (Olmesartan) Products Liab. Litig.*, 319 F.R.D. at 140 (D.N.J. 2017).

14. The District of New Jersey in *In re Benicar* held in its decision that it adopts the majority view regarding expert disclosure requirements under Rule 26(a)(2)(B) as well as the definition of "considered" from the *Synthes Spine* decision. *In re Benicar (Olmesartan) Products Liab. Litig.*, 319 F.R.D. at 141 (These holdings comport with the comment to Rule 26 and are consistent with the language and spirit of the Rule.). The *Synthes Spine* decision applied a broad definition of "considered" in Rule 26(a)(2)(B) by requiring the disclosure of all information a testifying expert "**generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions**, even if such information is ultimately rejected." *Synthes Spine Co., L.P. v. Walden,* 232 F.R.D. 460, 463 (E.D.Pa.2005); *Fialkowski*, CIV.A. 11-5139, 2012 WL 2527020, at *3 ("Because plaintiff's expert admits that he reviewed the requested materials in forming his opinions, there is no question that he "considered" these materials within the meaning of Rule 26(a)(2)(B).")

15. Importantly, the *Synthes Spine* decision also held that "the overwhelming majority of courts addressing this issue have adopted a pro-discovery position, **concluding that, pursuant to Rule 26(a)(2)(B), a party must disclose all information provided to its testifying expert for consideration in the expert's report, including information otherwise protected by the attorney-client privilege or the work product privilege**." *Synthes Spine*, 232 F.R.D. at 463; *In re Benicar (Olmesartan) Products Liab. Litig.*, 319 F.R.D. at 141. "[T]his bright-line rule serves

important policy considerations, including the facilitation of effective cross-examination and the resolution of uncertainty as to the discoverability of documentation divulged to a testifying expert." *Synthes Spine*, 232 F.R.D. at 464.

i) <u>Mr. Emolo Relied on the Facts and Data Provided by Mr. Cybanski.</u>

16. On May 24, 2022, Plaintiffs deposed Mr. Emolo, First Student's accident reconstructionist. Mr. Emolo testified at his deposition that he relied on Mr. Cybanski's expert report regarding several points of data including the position of the buses, the time of impact after the buses began moving, and the speed of the buses, as seen below:

> **Q. You chose the resting -- you chose the position of the bus was stopped when it was unloading the children based on what [Cybanski][*sic*] did, correct?**
>
> A. That is correct.
>
> **Q. Okay. What else have you relied on [Cybanski][*sic*] for?**
>
> A. The time after impact when the First Student bus moved, and the speed of the McGough bus as it moved its second time all the way up to impact.
>
> **Q. So is it fair to say then, the positioning and movement and the speed of that movement of both buses, is something that you were relying on [Cybanski][*sic*]for?**
>
> A. That is correct.

*See* Ex. 5- Deposition of Emolo at p. 204:3-18.

> **Q. That's what I was going to ask. So you could not have come to a conclusion about where these buses were and the rate at which their movement was in this incident, is that fair?**
>
> A. That's fair.
>
> **Q. Okay. So if [Cybanski][*sic*] is wrong, you're wrong, right?**
>
> MS. RUCCIA: Objection.
>
> THE WITNESS: If **[Cybanski's][***sic***]** time and distances and speeds are wrong,

8

yeah that would change my opinions.

**MR. BALL: Okay. Fair enough.**

*See id.* at p. 205:4-15.

ii)   <u>Mr. Emolo Reviewed Mr. Cybanski's Draft Report</u>

17.   Mr. Emolo also testified that he may have received the draft report electronically prior to reviewing it but then subsequently provided conflicting testimony that he never received nor read any version of Mr. Cybanski's report other than the final report, as seen below:

**Q.   Well I assume you read only his final draft report, correct?· Or his final report, correct?· You didn't read drafts of them or anything I would assume.**

A.   I don't recall if I had a draft. I know I read his final report, yes.

**Q.   Well, you didn't --let's put it this way. The first one that you read, is that the last one that you read?**

MS. RUCCIA:       Objection. Objecting to any attorney-client privilege or expert retention by defense.

**MR. BALL:   Yeah. Thanks for your objection but it does not apply to this.**

**BY MR. BALL:**
**Q.   The first one that you read, is that the last one that you read?**

A.   No.

MS. RUCCIA:· Same objection.

**MR. BALL:**
**Q.   You understand what I'm asking, sir?**

A.   No, I don't.

**Q.   Did you ever read more than one version of his report?**

A.   Again, I don't recall if he ever sent a draft report to my office. It may have been online or something I read it. But I read his final report.

**Q.   Well if you did, I get to read that. If you read it, I get to read it. So I need to know from you if you read a draft report or if it is his final report that**

9

**you read and then made your opinion -- based your opinions on.**

MS. RUCCIA: Same objection. For attorney-client work product and retention of experts.

**MR. BALL: You are really confused on what that objection is, but that's fine.**

THE WITNESS:     My report was finalized after reviewing his final report.

**BY MR. BALL:**
**Q.     Yeah, that's not really my question though. My question to you is, did you base your opinions off of his final report or did you review something other than his final report, i.e., a draft report, whatever we want to call it, before you made your final opinions?**

MS. RUCCIA:     Same objection.

THE WITNESS:     I based my opinions off his final report.

**BY MR. BALL:**
**Q.     Okay. And I guess -- this is why I say was the first one you read the last one you read, i.e., did someone hand you a copy of it and then that's the one that you went the off of, right?**

A.     I got the copy of his report e-mailed.

Q.     Right. And you never received an e-mail before that had another report or anything like that, is that fair?

A.     I did not, no.

**Q.     Okay, right. So that means the first one you read was the last one. That's the short way of saying it, right?**

A.     Okay.

**Q.     We can agree there?**

A.     Yeah.

*See id.* at p. 261:1-263:16.

iii)    <u>Mr. Cybanski Provided Mr. Emolo With a Draft Report.</u>

18.    On September 9, 2022, Plaintiffs deposed First Student's expert Adam Cybanski

on his expert report related to his review and analysis of the school bus surveillance footage. However, within fifteen minutes of starting the deposition, Plaintiffs had to end the deposition because First Student lodged multiple inappropriate objections and corresponding instructions not to answer questions premised on relevant and discoverable areas of examination. Specifically, First Student improperly instructed Mr. Cybanski not to answer certain questions regarding the existence of a draft report that Mr. Cybanski admitted providing to First Student's designated accident reconstructionist, Mr. Emolo. Plaintiffs allowed multiple opportunities for First Student to withdraw its improper objection and instruction; however, First Student continued to instruct Mr. Cybanski not to answer in complete obstruction of Plaintiffs deposition. *See generally* Ex. 4-Deposition of Adam Cybanski at p. 11:3-12:23.

19.     In his deposition, Mr. Cybanski admits that he provided a draft report by email to Michael DiCicco with SKE Forensic Consultants, which is Mr. Emolo's firm; however, neither the email nor the draft report were in Mr. Cybanski's expert file. When asked if he could provide Plaintiffs with the email, First Student objected and improperly instructed Mr. Cybanski not to answer on the grounds of work-product and consulting-expert privilege despite unequivocal testimony that facts and data were provided to Mr. Emolo for his review and consideration. The relevant portions of testimony are reproduced below:

> **BY MR. BALL:**
> **Q. Were there drafts of this report that were issued before February 7, 2022?**
>
> A.  Yes, there were.
>
> **Q. Did you provide any of those drafts to defense counsel?**
>
> MR. MONDORA:  Objection to form. Don't answer that.
>
> **BY MR. BALL:**
> **Q. Did you provide any of those drafts to any other expert in this matter?**

MR. MONDORA:  Objection to form. You can answer that one.
THE WITNESS:  Yes, I did.

**BY MR. BALL:**
**Q.   Okay.  Who did you provide drafts to?**

MR. MONDORA:  Same objection.  You know, work product privilege and consulting expert.

**BY MR. BALL:**
**Q.   You may answer.**

A.   I provided the draft report to Mr. Mondora, Mr. Marcus, and I believe -- I'm trying to remember who it was from the firm, as well.  I believe –

MR. MONDORA:  Just to be clear, Adam, he's not asking about my office, he's asking about folks outside of my office, whether you provided drafts of this report to folks outside of my office.  That's the question that's on the table.

THE WITNESS:  Okay.  I believe I provided drafts to Mr. [DeCicco][*sic*] from SKE Forensics.

BY MR. BALL:
**Q.   From SKE, I believe that would have been, is that Emolo or Docker, I can't-- yeah, it's Emolo, correct?**

A.   Not Joe Emolo, no –

**Q.   You provided –**

A.   -- from that firm.

**Q.   I understand.  You provided it to [DeCicco][*sic*], I don't know who [DeCicco][*sic*] is, but [DeCicco][*sic*] is with SKE, Emolo's outfit, correct?**

A.   Correct.

*See* Ex. 1- Deposition of Adam Cybanski at p. 11:3-12:23.

…

**BY MR. BALL:**
**Q.   Okay.  When did you provide this draft to [DeCicco][*sic*], please, sir?**

A.   I cannot remember.

12

> **Q. Okay. Would that be in your file? I assume that you probably did it via e-mail, correct?**
>
> A. Yes.
>
> **Q. Okay. I don't have that e-mail, so if you could, can you look in your file and tell me when that e-mail would have been sent?**
>
> MR. MONDORA: Object to the form. He's not going to answer that question. Again, this is consulting expert protected privilege.

   *See* Ex. 1- Deposition of Adam Cybanski at p.13:6-21.

iv)     <u>Mr. Cybanski's Draft Report is Discoverable and Relevant.</u>

   20.     First, Mr. Cybanski's draft report is discoverable because Mr. Emolo reviewed and "considered" it when forming his opinions. The draft report may have been privileged when provided to the attorneys, but once Mr. Cybanski provided it to Mr. Emolo (through Mr. DeCicco) for his review and consideration, the draft report lost its privileged status and should have been disclosed. Plaintiffs would also note that there is no dispute that Mr. DeCicco assisted and works with Mr. Emolo as they both are part of SKE Forensic Consultants.

   21.     Faced with a similar issue in *Bombardier Recreational Products, Inc., et al v. Arctic Cat, Inc., et al*, the U.S.D.C. of Minnesota granted Arctic Cat's request for draft reports exchanged between two of Bombardier's experts. *Bombardier Recreational Prod., Inc., et al., v. Arctic Cat, et al*, Case No. 12-cv-2706 at *9 (ADM/LIB) (D. Minn. Apr. 19, 2016). The deposition testimony revealed that one of the experts reviewed drafts of the other expert's report and vice versa. *Id*. The testimony also revealed that the draft reports not only were reviewed, but that comments were made and shared with the other expert. *Id*. at *10. The U.S.D.C. of Minnesota applied the same broad definition of "considered" used in Rule 26 with respect to expert disclosure requirements as New Jersey courts holding as follows:

> "The overwhelming weight of the caselaw is clear that an expert is required to provide the facts and data that the expert reviewed in preparing the opinion, regardless of

13

>whether the expert actually ultimately relied on the facts and data in formulating the opinion. See, e.g., Damgaard v. Avera Health, No. 13-cv-2192 (RHK/JSM), 2015 WL 4993701, at *4 (D. Minn. June 18, 2015); McCormick v. Halliburton Energy Services, Inc., No. 11-cv-1272, 2015 WL 2345310, *2 (W.D. Okla. May 14, 2015) ("For Rule 26 purposes, a testifying expert has 'considered' data or information if the expert has read or reviewed the privileged materials before or in connection with formulating his or her opinion")."

*Id*. at *5.

22. The relevant portion of the court's analysis regarding Rule 26 and the testimony surrounding the exchange of draft reports by Bombardier's experts is as follows:

>"While the Pretrial Scheduling Order does provide that drafts of expert reports shall not generally be discoverable, (see Pretrial Scheduling Order, [Docket No. 267], as amended, at (g)(2)(F)]), the Federal Rules of Civil Procedure also provide that a party is entitled to all the facts and data considered by another party's expert in forming that expert opinion. Fed. R. Civ. P. 26(a)(2)(B)(ii). At issue here is not an unadulterated expert report draft copy. At issue here are three expert report drafts with editorial comments prepared by a different expert, which each issuing expert reviewed and considered before finalizing their respective expert report. As such, Arctic Cat is entitled to the comments on the drafts and the portions of the drafts (for context) to which those comments relate. See Id.
>
>Therefore, to the extent Arctic Cat's motion seeks the comments and drafts exchanged between Larson and Raasch, the motion is **GRANTED** as set forth above."

As in *Bombardier*, at issue here is not an unadulterated draft expert report, but rather whether or not Mr. Emolo materially participated or influenced in the creation of Mr. Cybanski's report. Importantly, Plaintiffs were prevented from inquiring further about whether or not comments or edits were made to Mr. Cybanski's draft report as well as the corresponding communications that may have been exchanged between the two experts because 1) Mr. Emolo testified that he did not receive Mr. Cybanski's draft although Mr. Cybanski's testimony demonstrates that he did; and 2) First Student instructed Mr. Cybanski not to answer any questions regarding the draft report.

23. Second, the draft report is relevant and important because Mr. Cybanski's opinions/analysis of the surveillance footage can change or vary depending on the foundational facts, the majority of which were provided by Mr. Emolo in his accident reconstruction report-- i.e. where the kids were standing from the bus, whether the kids were in the "danger zone," the

14

distance that the kids walked and the distance the buses traveled. Plaintiffs are entitled to find out if Mr. Emolo materially participated in the formation of Mr. Cybanski's opinions especially considering that Mr. Emolo relied on the facts and data in Mr. Cybanski's report and Plaintiffs cannot go forward until finding out the degree to which Mr. Emolo participated in the formation of the opinions.

24.     Discovering the circumstances surrounding Mr. Cybanski's disclosure of a draft report to Mr. Emolo is also important to verify whether or not Mr. Cybanski worked backwards in coming up with his opinion regarding the movement of the children as well as to verify the consistency of each experts' measurements regarding the childrens' movement. The entire reconstruction depends upon the movement of the children, which is absent from the review of the surveillance video and relies on measurements taken by Mr. Emolo. After providing his draft report to Mr. Emolo, it begs the question of whether Mr. Cybanski took the distances and measurements supplied to him by Mr. Emolo to create a diagram of the children's movements, or if Mr. Cybanski provided his own measurements which were inconsistent with Mr. Emolo's and subsequently changed so the children were not located in the "danger zone."

25.     Further, First Student's improper instruction and vehement refusal to produce Mr. Cybanski's draft report and corresponding communications with Mr. Emolo's office obstructed Plaintiffs from uncovering relevant evidence for the purposes of either impeaching Mr. Emolo or establishing that Mr. Emolo committed perjury. At Mr. Emolo's deposition on May 24, 2022, Mr. Emolo initially testified that he did not recall if he had Mr. Cybanski's draft report nor did he recall if Mr. Cybanski sent a draft report to his office, but that he may have received the draft report online/electronically and then read it. *See* Ex. 5- Deposition of Emolo, *supra*, at p. 261:1-263:16. Shortly thereafter, Mr. Emolo contradicts himself and testifies that he never received nor read a

draft report or version other than Mr. Cybanski's final report. *Id*. In addition to Mr. Emolo's own inconsistent testimony, Mr. Cybanski unequivocally testified on September 9, 2022 that he emailed his draft report to Mr. Emolo and his firm, SKE Forensics. *See* Ex. 4- Deposition of Adam Cybanski at p. 11:3-12:23. Mr. Cybanski's testimony is consistent with Mr. Emolo's initial testimony that he received and read the draft report; however, it contradicts Mr. Emolo's subsequent testimony that he never received nor read a report other than Mr. Cybanski's final report.

26. It appears that First Student's reluctance in producing Mr. Cybanski's draft report and the corresponding communications is likely First Student's attempt to avoid disclosing damaging impeachment evidence against Mr. Emolo, one of First Student's most important liability witnesses, or perhaps to avoid an inquiry as to whether Mr. Emolo committed perjury. In either scenario, First Student is now doing everything it can to prevent Plaintiffs from discovering such information.

27. Accordingly, First Student failed to provide the draft report and related communications as part of the experts' files despite testimony that Mr. Emolo relied on the facts and data provided by Mr. Cybanski as well as testimony that Mr. Emolo received and reviewed Mr. Cybanski's final report and a draft report.

**B.  First Student Previously Asserted the Same Argument When First Student Demanded Plaintiffs' Consulting Expert Report That Was Provided to Plaintiffs' Testifying Experts.**

28. First Student recently sought disclosure of a consulting report for a life care plan from Plaintiffs' consulting expert, Valerie Parisi. *See* Ex. 6- Aug. 28, 2022 Email from FS re Parisi Report. Plaintiffs initially objected asserting work-product and consulting expert privilege because Plaintiffs never designated Ms. Parisi as a testifying expert and as a general rule consulting expert

reports are privileged from disclosure pursuant to Fed. R. Civ. P. 26(b)(4)(D). However, First Student claimed in its request that it "has **the right** to any and all reports, documents and materials of Ms. Parisi related to this matter" because two of Plaintiffs' testifying experts, Irene Mendelsohn and Dr. Esquenazi, considered Ms. Parisi's report in forming their opinions. *See* Ex. 6- Aug. 28, 2022 Email from FS re Parisi Report. First Student also subpoenaed Ms. Parisi for any and all reports, documents and materials. *See* Ex. 7- Aug. 26, 2022 Letter re Parisi Subpoena. After reviewing the case law and the federal rules, Plaintiffs disclosed the Parisi report because even though Plaintiffs' testifying experts did not rely on the Parisi report, they had reviewed and "considered," as broadly defined by the District of New Jersey, the Parisi report.

29.   With regards to the Cybanski Draft Report; however, First Student now wants to "have its cake and it eat too" by taking the exact opposite position. While First Student previously claimed that it had the "right" to the Parisi Report because Plaintiffs' testifying experts "considered" it despite Plaintiffs' assertions of privilege, First Student now takes the untenable position and refuses to produce the Cybanski Draft Report, which was provided to and "considered" by Mr. Emolo, on the basis of work-product and consulting expert privilege. *See* Ex. 1- Deposition of Adam Cybanski at p. 11:3-12:23 p.13:6-21. First Student has placed itself in a legally precarious position in an attempt to improperly hide relevant and discoverable documents from Plaintiffs.

## CONCLUSION

For these reasons, Plaintiffs seek an Order from this Court compelling First Student to produce Mr. Cybanski's draft report and corresponding communications with Mr. Emolo as previously required by the Court; compelling First Student to present Mr. Cybanski and Mr. Emolo for deposition again; and sanctioning First Student for the costs and expenses incurred in taking

the deposition, filing this motion to compel, and re-deposing the witnesses.

By: */s/ Joseph J. Urban*  
Joseph J. Urban  
Law Offices of Vincent J. Ciecka, P.C.  
5709 Westfield Avenue  
Pennsauken, NJ 08110  
856-665-5709  
jurban@ciecka.com  
Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WYKEYA WILLIAMS and LAMONT WILBERT HANNAH, individually and in Their own right, and as Parents and Natural Guardians on behalf of L.H. (a Minor Son) and L.H. (a Minor Daughter) | : : : : : : | CIVIL ACTION NO.: 1:20-cv-001176 |
| Plaintiffs, | : : |  |
| FIRST STUDENT, INC., | : : |  |
| Defendant. | : : : |  |

**CERTIFICATE OF SERVICE**

    I, Joseph J. Urban, hereby certify that on this 7th day of October 2022, a true and correct copy of Plaintiffs' Motion to Compel the Draft Report of First Student, Inc.'s Testifying Expert Adam Cybanski was served via the CM/ECF filing system to all parties.

By: */s/ Joseph J. Urban*
Joseph J. Urban
Law Offices of Vincent J. Ciecka, P.C.
5709 Westfield Avenue
Pennsauken, NJ 08110
856-665-5709
jurban@ciecka.com
Counsel for Plaintiffs