[ECF No. 280]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WYKEYA WILLIAMS et al., <br><br> **Plaintiffs,** <br><br> v. <br><br> **FIRST STUDENT INC.,** <br><br> **Defendant.** | Civil No. 20-1176 (CPO/SAK) |

**OPINION**

This matter is before the Court on the Motion for Sanctions and Default Judgment for False Statements in Discovery filed by Plaintiffs Wykeya Williams and Lamont W. Hannah, individually and in their own rights, and as parents and natural guardians of Plaintiff L.H. (minor son) and Plaintiff L.H. (minor daughter) (collectively, "Plaintiffs"). The Court considered Plaintiffs' moving papers [ECF No. 280] and Defendant's opposition [ECF No. 291]. The Court exercises its discretion to decide the motion without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, this motion is **DENIED**.

**I.   BACKGROUND**

This action arises out of an incident that occurred on October 26, 2017 in Camden, New Jersey. On that date, both minor plaintiffs were passengers in a school bus owned and operated by Defendant. *See* Compl. at ¶ 10. [ECF No. 1]. After exiting Defendant's school bus, the minor son was struck and injured by a school bus owned by McGough Bus Company. *See* Compl. ¶¶ 10-16. [ECF No. 1]. As a result, the minor son suffered serious injuries that ultimately necessitated the

amputation of his right leg. *Id.* At the time of the incident, the minor son was six (6) years old. *See* Pls. Br. 2.

Plaintiffs allege that central to this litigation is the concept of a "'Danger Zone,' consisting of the area around a school bus, particularly in the rear, where drivers have no visibility." *Id.* They allege that Defendant's school bus driver allowed children to "cross the street behind his bus, and [] failed to ensure the Danger Zone was clear before lowering his stop signs, disengaging his flashing lights, and putting his bus in motion." Pls. Br. 2. They allege that "[t]he only witness who claimed that the children were cleared from the Danger Zone was the First Student bus driver." *Id.* at 3. Plaintiffs state that their expert witness uncovered video evidence from weeks prior to the incident, that showed Defendant's bus driver "flagrantly violating almost every First Student policy in existence, including . . . departing stops, 'while students are in the Danger Zone' and 'paying little attention to the traffic around the bus as students are loading and unloading.'" *Id*. at 3. Plaintiffs claim the video evidence showed the bus driver failing to monitor the Danger Zone while these activities were occurring. *Id*.

For purposes of this litigation, Defendant retained the services of Adam Cybanski ("Cybanski"), a video analysis expert who issued an expert report on February 7, 2022. *See* Def. Br. 1; *see also* [ECF No. 234-9]. Defendant also retained the services of accident reconstruction expert, Stephen Emolo ("Emolo"), to determine "whether [Defendant's] bus moved before or after the McGough Company [] bus struck the minor plaintiff." *See* Def. Br. 1. On February 9, 2022, Emolo issued his expert report ("Emolo Report") [ECF No. 234-10]. He indicated that in preparing his report, he reviewed the Cybanski Report. *See* Emolo Report at 6 [ECF No. 234-10]. Plaintiffs contend that "Emolo's opinions rely entirely on Cybanski's conclusions." Pls. Br. 3. Alleging that Emolo "confirmed that without Cybanski's conclusions, '[Emolo] could not have come to a

2

conclusion about where these buses were and the rate [of] their movement.'" *Id*. Plaintiffs contend that Defendant relies on Emolo and Cybanski to create "an alternative version of the incident— one in which the First Student bus had not already departed at the time of the collision." *Id*.

Plaintiffs assert that at Emolo's May 24, 2022 deposition, Emolo testified that he considered only the final report submitted by Cybanski and "never received an email with any draft report, and that he did not consider the content of any draft report in coming to his opinions." Pls. Br. 6; *see also* Emolo Dep. 261:1-263:16 [ECF No. 280-4]. Yet, Plaintiffs state that at Cybanski's September 9, 2022 deposition, Cybanski testified that "he provided drafts of his expert report to Michael DiCiccio of SKE Forensic Consultants, LLC ("SKE"), the same consulting firm with which Emolo is affiliated." Pls. Br. 6. Defendant counters that Emolo clarified his testimony with an Errata sheet, indicating that Emolo "had previous discussions with Cybanski, but could not recall the specifics, and that he reviewed materials emailed by Cybanski." Errata sheet 3, 6 [ECF No. 291-2]; *see also* Def. Br. 7. Defendant asserts that no coordination existed between Emolo and Cybanski. *See* Def. Br. 8.

On October 9, 2023, Plaintiffs moved to compel discovery related to Cybanski's consulting work for defense counsel. [ECF No. 228]. Subsequently, on October 25, 2022 Defendant filed a cross motion for a protective order for all materials sought in Plaintiffs' motion to compel. [ECF No. 235]. On February 17, 2023, the Court granted in part and denied in part Plaintiffs' motion to compel. [ECF No. 259]. The Court ordered Defendant to produce all four draft reports that Cybanski shared with SKE, all email communications from Cybanski to SKE, and permitted the re-depositions of Cybanski and Emolo. *See id*. The Court, however, denied Plaintiffs' motion for sanctions and Defendant's cross motion for a protective order. *See id*.

Plaintiffs now allege that the court-ordered disclosure of emails "revealed that Emolo and SKE were intimately involved in the creation of Cybanski's report, [and that Emolo] instructed Cybanski on the conclusion [Emolo] wanted him to reach, made extensive substantive revisions to four draft reports . . . and ultimately exerted significant influence over the final product." Pls. Br. 9. Plaintiffs state that Cybanski provided four draft reports to Emolo and his associate between September 7, 2020 and October 9, 2020, all of which were revised or edited by Emolo and his associate. *Id*. at 10. They assert that while all versions of Cybanski's report find that the First Student bus began moving approximately one second after impact with the minor son, the body of the draft reports were extensively edited and revised by SKE. *Id.* at 11.

Consistent with the Court's February 17, 2023 Order, Plaintiffs re-deposed Emolo on May 11, 2023. Pls. Br. 12. During his second deposition, Emolo acknowledged he considered Cybanski's draft reports. *Id*. However, he stated he did not rely on those reports, but rather on Cybanski's final report. *Id.* Plaintiffs conclude that "it would have been obvious from a review of the emails for the privilege log that Emolo's original deposition testimony was false." *Id.* at 13.

Defendant disputes Plaintiffs' assertions. Defendant contends that "plaintiffs take issue with how certain words and emails sound, i.e., alleging that the words Emolo's associate used in his email to Cybanski suggested a desired result." Def. Br. 12. Defendant argues "it is nonsensical to suggest . . . that an expert was 'improperly influenced' to reach an accurate result." *Id.* Defendant claims Plaintiffs "failed to demonstrate 'improper evidence' or inaccuracies with Cybanski's opinion," and consequently "struggle, to claim Emolo made substantive changes to other portions of Cybanski's work." *Id.*

Plaintiffs filed the instant motion seeking the entry of default judgment on liability, or alternatively, the exclusion of any testimony from Emolo under Federal Rule of Civil Procedure

4

37. *See* Pls. Br. 30. Defendant opposed the motion, arguing that Plaintiff (1) failed to seek leave of Court prior to filing this application,[1] and (2) failed to demonstrate that sanctions are warranted under *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984).

## II.   DISCUSSION

### A.   Legal Standard

Federal Rule of Civil Procedure 37 authorizes the imposition of sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Pursuant to this rule, the Court may prohibit the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; or may render a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(ii)(vi). In determining whether to "sanction a party by depriving that party of the right to proceed with or defend against a claim, the court applies the analysis established in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)." *IFMK Realty II, LLC v. Atl. Prop. Dev. LLC*, 2022 WL 2439905, at *3 (D.N.J. Apr. 14, 2022), *report and recommendation adopted sub nom. IMFK Realty II, LLC v. Atl. Prop. Dev. LLC*, 2022 WL 4132449 (D.N.J. Sept. 12, 2022).

The *Poulis* factors include: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis*, 747

---

[1] Defendant first argues that Plaintiffs' motion is procedurally improper because they failed to obtain leave of Court prior to filing their motion. *See* Def. Br. 9. However, in the interest of judicial efficiency, the Court will overlook any procedural deficiency and evaluate Plaintiffs' motion on its merits.

5

F.2d at 868 (emphases omitted). While "[n]ot all of these factors need be met for a district court to find dismissal is warranted," the Third Circuit "have always required consideration and balancing of all six of the factors and have recommended the resolution of any doubts in favor of adjudication on the merits." *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 162 (3d Cir. 2003) (citation omitted) *citing Scarborough v. Eubanks,* 747 F.2d 871, 878 (3d Cir.1984). Dismissal of an action for failure to comply with a discovery order is a severe sanction and "should only be ordered as a last resort." *NHL v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778; *see also Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir. 1988).

**B.     Analysis**

The Court finds the balancing of the *Poulis* factors weighs against the imposition of sanctions. An analysis of these factors follows.

    **1.     The Extent of a Party's Personal Responsibility**

The first *Poulis* factor requires the Court to consider "whether the party bears personal responsibility for the action or inaction[.]" *Adams v. Tr. of the New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 873 (3d Cir. 1994). Specifically, a court will look at "whether the misconduct that occurred is attributable to the party or to the party's attorney." *See id; see also Hicks, 850 F.2d at 156.* Here, Plaintiffs argue that "it is clear that First Student and not merely Emolo is responsible for the misconduct, since First Student filed false statements with the Court to maintain the deception." Pl. Br. 29. However, Plaintiffs fail to substantiate their claim that First Student is responsible for any discovery violations. While Emolo made misrepresentations or misleading statements in his first deposition, and while defense counsel's certification accompanied Defendant's opposition to Plaintiffs' motion to compel [ECF No. 234-2], there were no certifications or other documents produced by any First Student representative to suggest

Defendant is personally responsible for the discovery violations alleged by Plaintiffs. This factor weighs against sanctions.

### 2. Prejudice to the Adversary

Plaintiffs contend that "the prejudice First Student sought to inflict is self-evident." Pls. Br. 29. However, Plaintiffs fail to describe this "self-evident" prejudice. Nonetheless, while Plaintiffs argue that the body of Cybanski's draft reports were extensively edited and revised by SKE, they indicate that all versions of the report reached the same conclusion—that the First Student bus began moving approximately one second after impact with the minor son. Defendant also disputes Plaintiffs' claim that Emolo made substantive changes to Cybanski's draft reports. *See* Def. Br. 15. Defendant states that the removal of a purportedly substantive and unfavorable sentence from the draft report—indicating that deceleration by the McGough bus likely immediately followed the pedestrian's impact with the vehicle—had no substantive significance. *Id.* at 15-16. Defendant contends that the sentences preceding and following the omitted sentence have the same meaning as the omitted sentence—that "the McGough bus driver failed to brake until after she hit the minor plaintiff." *Id.* at 16.

In *Chiarulli v. Taylor,* 2010 WL 1371944, at *3 (D.N.J. Mar.31, 2010), the District Court found "[a] party may also be prejudiced if its 'ability to prepare effectively a full and complete trial strategy' is impeded." *Id.* (citation omitted). Here, Plaintiffs have not alleged—nor can they allege—that they are prejudiced by an inability to effectively prepare for trial. Concerned that Plaintiffs may have been prejudiced by apparent inconsistencies in Emolo's first deposition, the Court in its February 17, 2023 Order [ECF No. 259], required Defendant to produce documents bearing on the apparent inconsistencies, and permitted Plaintiffs to re-depose both Emolo and Cybanski. Consistent with the Court Order, email communications and draft expert reports were

7

produced to Plaintiffs, and Plaintiff took advantage of the opportunity to re-depose Emolo. The Court intended these remedies to cure any prejudice attributed to any misrepresentations or misleading testimony by Emolo. Additionally, Plaintiffs can also use the purported false and misleading testimony to discredit Emolo's credibility at trial. This factor weighs against sanctions.

### 3. History of Dilatoriness

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874  (quoting *Scarborough v. Eubanks,* 747 F.2d 871, 876 (3d Cir.1984)).  These problematic acts must be evaluated on the history of the entirety of the case. *Scarborough*, 747 F.2d at 876; s*ee also Adams*, 29 F.3d at 874. Here, Plaintiffs claim "there has been a pattern of dilatoriness and resistance to legitimate discovery, as Plaintiffs have required multiple hearings and orders compelling disclosures." Pl. Br. 29. Plaintiffs cite to their October 2020 motion to compel production of unredacted copies of policy documents. Pls. Br. 25-27. They state that the court-ordered production of unredacted documents revealed "crucial" policies relating to bus drivers' responsibilities, contrary to representations made by Defendant in withholding discovery. *Id*. In response, Defendant suggests that Plaintiffs are without clean hands. First Student claims that "plaintiffs all repeatedly denied having social media accounts, were all caught with social media accounts, were ordered to provide social media discovery," filed an unsuccessful motion to avoid further disclosure of social media discovery, and appealed the denial of this motion. Def. Br. 18.  While Plaintiffs appropriately filed discovery motions to obtain relevant evidence in this case, the Court notes that once rulings were issued, Defendant complied with its court-ordered obligations. As Defendant asserts and as the docket reflects, Plaintiffs also engaged in discovery violations, requiring Court intervention to produce certain discovery. So, while there may be some

history of dilatoriness, the Court finds that Plaintiffs and Defendant engaged in conduct that delayed discovery and warranted Court intervention. The Court finds this factor to be largely neutral.

### 4. Willfulness or Bad Faith of the Attorney or Party

Willfulness "involves intentional or self-serving behavior." *Adams,* 29 F.3d at 875. Courts often look for evidence of intentional or self-serving behavior that indicates flagrant bad faith. *See id*. Plaintiffs emphasize Emolo's "false statement" as the basis of their request for sanctions. They rely on *Amfosakyi v. Frito Lay, Inc*. 496 F. App'x, 225 (3d Cir. 2012) for the proposition that "a litigant who provides false documentation and/or untruthful testimony during the course of discovery in an improper attempt to influence the outcome of the civil action may be prohibited by the District Court, pursuant to *Poulis* and Rule 37, from proceeding with the civil action." *Id*. at 225; *see also* Pl. Br. 28. However, in *Amfosakyi,* the plaintiff himself—as opposed to his counsel or expert witness—fabricated a letter of material relevance to his claim, and when deposed about the authenticity of the document, testified falsely about the document. *Amfosakyi*, 496 F. App'x at 225. Emolo's conduct does not rise to level of the conduct in *Amfosakyi.* Here, documents were not fabricated. Moreover, when deposed about the inconsistencies in his first deposition and the documents produced pursuant to the February 17, 2023 Court Order, Emolo acknowledged that he considered Cybanski's draft report before rendering Emolo's report. Pls. Br. 12. Plaintiffs also acknowledge that the conclusion in all four draft reports remained unchanged throughout the revising process. *See id*. Defendant also argues that the removal of a purportedly substantive and unfavorable sentence from the draft report—indicating that deceleration by the McGough bus likely immediately followed the pedestrian's impact with the vehicle—had no substantive significance. Additionally, in its opinion on Plaintiffs' motion to compel, the Court found

"Defendant's nondisclosure on the basis of the work-product doctrine and assertion of the consulting expert privilege . . . was substantially justified." [ECF No. 259]. The Court finds this factor to be largely neutral.

### 5. Effectiveness of Alternative Sanctions

*Poulis* requires that a district court consider whether sanctions other than dismissal would be effective. *Poulis,* 747 F.2d at 869. "The Third Circuit has identified several alternative sanctions available to a court, including 'a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees . . . [or] the preclusion of claims or defenses.'" *Smith ex rel. El Ali v. Altegra Credit Co.,* 2004 WL 2399773, at *7 (E.D.Pa. Sept. 22, 2004) (quoting *Titus v. Mercedes Benz of N. Am.,* 695 F.2d 746, 759 n. 6 (3d Cir.1982)). "Dismissal must be a sanction of last, not first, resort," and a court should assure itself that no other sanction would "serve the ends of justice." *Poulis,* 747 F.2d at 869; *Titus,* 695 F.2d at 749–51.

Here, Plaintiffs seek a default judgment on liability, or alternatively, to preclude Emolo's testimony at trial. Even if the Court finds sanctions warranted, neither relief proposed by Plaintiffs serves the ends of justice. As a result of inconsistencies in Emolo's testimony, Plaintiffs sought to obtain certain documents. The Court ordered the production of these documents, and further permitted Plaintiffs to re-depose both Emolo and Cybanski. Plaintiffs re-deposed Emolo. Based on testimony obtained from both depositions and records relevant to both Emolo and Cybanski's expert reports, Plaintiffs can effectively prepare a full and complete trial strategy, including the cross examinations of both expert witnesses as to their mutual involvements in each other's reports. The Court in *Amfosakyi* stated that "plaintiffs are generally the masters of their legal actions [and as] such, they bear the responsibility for preventing actual prejudice to their claims by investigating [and] memorializing testimony from potentially forgetful or absent witnesses"); *Amfosakyi,* 496 F.

App'x at 225, quoting *N.Y. State Nat'l Organization for Women v. Pataki*, 261 F.3d 156, 166 (2d Cir. 2001). The *Amfosakyi* Court further stated that "[if plaintiff] suspected that the discrepancy was relevant to his claim . . . he should have considered deposing a few company witnesses, or otherwise investigating the discrepancy." *Id.* Here, Plaintiffs were provided with the opportunity to investigate any discrepancy by re-deposing both Emolo and Cybanski. Plaintiffs re-deposed Emolo. It is unclear whether they took advantage of the opportunity to re-depose Cybanski. The Court finds the relief provided in its February 17, 2023 Order properly served the ends of justice, and finds the entry of default judgement on liability or the exclusion of expert testimony unwarranted. *Poulis* makes clear that "[d]ismissal must be a sanction of last, not first, resort." *Poulis*, 747 F.2d at 869. The Third Circuit also recommends the resolution of any doubts in favor of adjudication on the merits." *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d at 162. This factor weighs against sanctions.

      **6.**    **Meritoriousness of Claim or Defense**

In evaluating whether a default judgment is warranted, "a claim will be considered meritorious when the allegations of the pleading, if established at trial, would support recovery by plaintiff, the meritoriousness of the claim for this purpose must be evaluated on the basis of the facial validity of the pleadings, and not on summary judgment standards." *Scarborough*, 747 F.2d at 871, 875. However, it is not necessary for a court to "balance both parties' claims and defenses' nor have a mini-trial before it can impose a default." *Mercer v. Under Armour, Inc.*, 2017 WL 891769, at *4 (D.N.J. Feb. 3, 2017), *report and recommendation adopted*, 2017 WL 886969 (D.N.J. Mar. 6, 2017). Here, the Court notes that Defendant's motion for summary judgment was granted in part, and denied in part [ECF No. 303]. Similarly, Plaintiff's motion for summary

judgment was denied without prejudice. *Id.* At this stage of litigation, it therefore appears that both Plaintiffs' claims and Defendant's defenses have merit. The Court finds this factor to be neutral.

The Court finds the balancing of the *Poulis* factors weighs against sanctions in the form of default judgment on liability or the exclusion of Emolo testimony based on misleading deposition testimony deposition.

### III. **CONCLUSION**

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **16th** day of **March 2024**, that Plaintiffs' First Motion for Sanctions and First Motion for Default Judgement as to False Statements in Discovery [ECF No. 280] is **DENIED**.

An appropriate Order has been entered.

s/ Sharon A. King  
SHARON A. KING  
United States Magistrate Judge

cc:  Hon. Christine P. O'Hearn, U.S.D.J.