**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

WYKEYA WILLIAMS, *et al.*,

Plaintiffs,

v.

FIRST STUDENT INC., *et al.*,

Defendants.

No. 1:20-cv-01176

**OPINION**

**APPEARANCES**:

**Walter Weir, Jr.**
WEIR LLP
20 Brace Road
Suite 201
Cherry Hill, NJ 08034

*On behalf of Kaster Lynch Farrar & Ball LLP and Law Offices of Vincent J. Ciecka.*

**Daniel Joseph Sherry, Jr.**
EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK P.C.
1634 Spruce Street
Philadelphia, PA 19103

**Joseph John Urban**
VINCENT J. CIECKA, P.C.
5709 Westfield Avenue
P.O. Box 560
Pennsauken, NJ 08110

*On behalf of Plaintiffs Wykeya Williams, Lamont Wilbert Hannah, L.H., and La.H.*

**Andrew Jay Kornblau**
**Diane J. Ruccia**

**Alexander Marcus**
**Gerald T. Ford**
LANDMAN CORSI BALLAINE & FORD, P.C.
1 Gateway Center
Newark, NJ 07102

**Lauren McGovern**
LANDMAN CORSI BALLAINE & FORD, P.C.
1617 JFK Boulevard
Suite 955
Philadelphia, PA 19103

**Charles William Mondora**
FOX ROTHSCHILD LLP
49 Market Street
Morristown, NJ 07960

**Brittany Barbet**
FOX ROTHSCHILD LLP
212 Carnegie Center
Suite 400
Princeton, NJ 08540

*On behalf of Defendant First Student Inc.,*

**O'HEARN, District Judge.**

This matter comes before the Court on a Motion for Attorney Fees, (ECF No. 334), and Motions to Seal, (ECF Nos. 360, 363, 366), by Movants Kaster Lynch Farrar & Ball LLP ("KLF&B") and Law Offices of Vincent J. Ciecka ("Ciecka Law Firm") (collectively, "the Law Firms"). The Law Firms seek $[redacted][1] in attorneys' fees and $[redacted] in costs for their representation of Minor Plaintiffs L.H. and La.H. and their parents, Wykeya Williams and Lamont Wilbert Hannah (collectively, "Plaintiffs"), in connection with a $[redacted] settlement with Defendant First Student, Inc. ("First Student"). The Court heard oral argument pursuant to Local Rule 78.1 on August 22, 2024, and issued an Order approving the First Student settlement the same day. However, the Court reserved judgment on the Law Firms' Motion for Attorney Fees and requested supplemental briefing as to the proper calculation under New Jersey Court Rule 1:21-7 ("Rule 1:21-7") and other supplemental documentation. (ECF No. 352). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the Motion for Attorney Fees. (ECF No. 334). The Court will approve $[redacted] in costs and $[redacted] in attorneys' fees as to the instant settlement. Additionally, the Court **ORDERS** that the Law Firms *separately* refund to Plaintiffs the costs and fees, plus interest, that the Law Firms improperly collected on a prior related settlement with nonparty McGough Bus Company ("McGough"), in violation of Rule

[1] The Court has redacted the costs, attorneys' fees, and settlement amounts throughout its Opinion for Plaintiffs' privacy. The Court emphasizes, however, that the settlements at issue were substantial, involving multimillions of dollars, making the Law Firms' conduct and the Court's concerns as outlined herein all the more egregious.

1:21-7 calculated as set forth herein. The Court **GRANTS** the Law Firms' Motions to Seal.[2] (ECF Nos. 360, 363, 366).

## I. BACKGROUND

Although this personal injury case involves rather simple, yet tragic, facts—a minor child being struck by a school bus and suffering amputation of a limb—the Court's determination of whether to approve the attorneys' fees and costs sought has been anything but simple. What should have been a rather routine analysis of whether to approve a proposed settlement on behalf of a minor and the associated attorneys' fees and costs has become unnecessarily complex and protracted, largely due to the Law Firms' lack of candor to the Court. As such, the Law Firms' Motion for Attorney Fees presents legal and ethical issues that warrant extended discussion. For this reason, and because of the significant impact on Plaintiffs and the important public policy underlying Rule 1:21-7, the Court will set forth, in unusual detail, the factual background as to the accident, Plaintiffs' retention of Ciecka Law Firm, Ciecka Law Firm's engagement of KLF&B, the first settlement reached with McGough, the instant settlement with First Student, and how the instant Motion reached its current posture.

### A. The Underlying Accident

On October 26, 2017, Minor Plaintiff L.H. was seriously injured while crossing the street

[2] The Court finds that the Law Firms have presented good cause to seal the filings associated with the Law Firms' August 21, 2024, September 6, 2024, and September 23, 2024 letters and have rebutted the presumption in favor of public accessibility given the settlement terms discussed, personal identifying information of the Minor Plaintiffs, and attorney work product regarding the confidential settlement amount and distribution of attorneys' fees. Accordingly, the Motions to Seal are granted, and further discussion is unwarranted.

in Camden, New Jersey after exiting a school bus owned and operated by Defendant First Student.[3] (Mot. Att'y Fees, ECF No. 335 at 6). At the time of the accident, Plaintiff L.H. was six years old. (Attach. 7, ECF No. 325-7 at ¶ 3). The accident was witnessed by L.H.'s sister, Minor Plaintiff La.H., who was also a passenger on the First Student bus and eleven years old at the time of the accident. (Mot. Att'y Fees, ECF No. 335 at 6; Attach. 7, ECF No. 325-7 at ¶ 3). The accident occurred when the First Student bus stopped on a two-lane street at the Minor Plaintiffs' bus stop and turned on its stop sign and safety signals, indicating to surrounding traffic that children were exiting the bus. (Mot. Att'y Fees, ECF No. 335 at 6). Minor Plaintiffs exited the First Student bus and were allegedly allowed by the First Student driver to walk behind the bus, placing them in the danger zone when they crossed the street. *Id*. While the Minor Plaintiffs were still in the danger zone, the First Student bus deactivated its stop sign and safety signals and proceeded to move. *Id.* In response, a bus in the opposite lane of travel, owned and operated by McGough,[4] also began to move and struck Minor Plaintiff L.H., causing him to suffer catastrophic injuries, including an amputation of his right leg below the knee. *Id.* While Minor Plaintiff La.H. was not struck, she witnessed her brother's horrific injuries and suffered her own emotional trauma as a result. *Id.*

**B. Plaintiffs' Engagement of Ciecka Law Firm**

On October 30, 2017, just four days after the accident, Wykeya Williams, mother of the

---

[3] First Student is a Delaware corporation with its principal place of business located in Ohio. (Notice of Removal, ECF No. 1 at ¶ 9).

[4] McGough is a New Jersey corporation with its principal place of business in New Jersey.

Minor Plaintiffs,[5] executed a single contingency fee agreement with a New Jersey firm, Ciecka Law Firm, individually and on behalf of her children, the Minor Plaintiffs (the "Ciecka Agreement"). (ECF No. 325-22). The Ciecka Agreement, as prepared and executed, complies with Rule 1:21-7, which sets the maximum contingency fee that an attorney may charge in a personal injury action for the benefit of a minor and mandates a sliding scale for contingency fees based upon the amount of the recovery in all cases. *Id*. Specifically, the Ciecka Agreement provided:

> 4. LEGAL FEES. If the Law Firm recovers money for you, which is greater than your costs and expenses (see paragraph 3), you will pay the Law Firm a legal fee. The fee will be based on a percentage of the net recovery pursuant to R.1:21-7. Net recovery is the total recovered on your behalf, minus your costs and expenses, and minus any interest included in a judgement pursuant to R.4:42-11(b). The fee will be as follows:
>
> 33 1/3% of the first $750,000 net recovery;
> 30% of the next 750,000 net recovery;
> 25% of the next 750,000 net recovery;
> 20% of the next 750,000 net recovery.
>
> Fees on net recoveries exceeding $3,000,000.00 will be determined by the Court. Attorney may receive the settlement and/or judgment amount and retain the percentage Attorney's fee. Before disbursing the remainder, Attorney may deduct therefrom the amount of all costs, expenses, liens, including but not limited to Workers Compensation pursuant to N.J.S.A. 34:15-40(e) and Child Support pursuant to N.J.S.A 2A:17-56.23(b).
>
> 5. REDUCED FEES for INFANTS or INCOMPETENTS. (Check one)
>
> [ ] This agreement is not signed on behalf of an infant or incompetent.
>
> [ ] The legal fee for a minor or incompetent shall be 25% on any amount recovered by settlement. The standard percentages (not limited to 25%) for settlement of minor cases, once jury is selected will apply.

---

[5] Ciecka Law Firm did not execute a fee agreement with the father of the Minor Plaintiffs, Lamont Hannah, Sr.

(ECF No. 325-22 at 3–4). Although the Agreement expressly referred to the reduced fee for minors, the appropriate box was not checked.

**C. The First Filed Litigation**

On March 22, 2018, Ciecka Law Firm, specifically, Joseph Urban, Esquire, filed suit on behalf of Plaintiffs against McGough and First Student in the Philadelphia Court of Common Pleas. (Attach. 7, ECF No. 325-7 at ¶ 4). There appears to have been no good faith basis for filing the lawsuit in Pennsylvania when (1) at the time of the accident and the time of the filing, Plaintiffs were citizens of New Jersey, (Williams Certification, ECF No. 325-30 at ¶ 2); (2) the accident occurred in New Jersey; and (3) New Jersey law clearly applied to the claims. Upon the Court's inquiry as to the basis for filing in Pennsylvania, the only reason proffered by Ciecka Law Firm was that it has "offices in Pennsylvania and New Jersey with attorneys licensed in both locations." (ECF No. 325-18 at 1). Subsequently, the Law Firms retained an attorney, who despite having "no firsthand knowledge of the case," submitted a declaration in support of the instant Motion for Attorney Fees, explaining that "[s]trategically, it made sense to initiate the lawsuit in Philadelphia County" because "jurors in Philadelphia County award larger verdicts than Camden County jurors." (Folkman Dec., ECF No. 341 at ¶ 10). Even assuming that to be the case, that does not overcome the fact that Pennsylvania was plainly the improper forum, in terms of both venue and jurisdiction. Indeed, McGough filed preliminary objections asserting lack of personal jurisdiction, which the Philadelphia Court of Common Pleas sustained, dismissing Plaintiffs' action against McGough on September 28, 2018. (Attach. 7, ECF No. 325-7 at ¶ 5).

On April 25, 2019, Plaintiffs voluntarily discontinued the lawsuit as to the remaining defendants and thereafter, at an unknown time, began to engage in settlement discussions with

McGough. (Praecipe to Discontinue, *Williams v. First Student, Inc.*, No. 180302496 (Apr. 25, 2019, Phila. Ct. C.P.); Attach. 7, ECF No. 325-7 at ¶ 6; Ball Certification, ECF No. 362-1 at ¶ 10).

**D. Plaintiffs' Engagement of the Texas Law Firm, KLF&B**

In May 2019 and October 2019, Plaintiffs executed fee agreements with a Texas law firm, KLF&B (the "KLF&B Agreement").[6] (ECF Nos. 325-3, 325-4, 325-5). The specific reason as to why and how the Texas law firm became involved remains unclear. Ms. Williams testified that Ciecka Law Firm made the decision to bring in KLF&B and Michael Sussen, an attorney with Ciecka Law Firm, told her that having KLF&B handle the case would "be better for the family." (Tr., ECF No. 359 at 22:12–19). Ms. Williams unequivocally, and credibly, testified that she "never initiated the Texas law firm," she believed that Ciecka Law Firm remained primary counsel at all times, and she "didn't know what the protocols were." (*Id.* at 23:19–24:4; 30:22–31:1). Ms. William's testimony is supported by the fact that Ciecka Law Firm never asserted that its attorney-client relationship with Plaintiffs was terminated.[7] Ms. Williams further testified that she was told

[6] The two KLF&B Agreements executed by Ms. Williams on behalf of herself and the Minor Plaintiffs are undated, and the first page omits the name of the client and states "This is an Agreement between __________("Client") and [KLF&B]." The third KLF&B Agreement, executed by Mr. Hannah, is dated October 18, 2019. However, Wesley Ball, an attorney at KLF&B, certified that his representation of Plaintiffs began at or shortly after a meeting with Ms. Williams on May 29, 2019, and he believes she signed the KLF&B Agreements then. (Ball Certification, ECF No. 362-1 at ¶¶ 6–8). If that is the case, there is no doubt that Plaintiffs remained New Jersey residents at that time, despite Mr. Ball's protestations that this case did not involve New Jersey and was an "out-of-state" matter. (Feb. 12, 2024 Ball Ltr., ECF No. 325-18 at 5). Further, there is no explanation provided for the five-month delay between the alleged commencement of representation and execution of the KLF&B Agreement with Mr. Hannah, other than it was an "oversight." (Ball Certification, ECF No. 362-1 at ¶ 8).

[7] The Ciecka Agreement provided that the firm could "terminate this contract for any just reason by notifying client in writing." (ECF No. 325-22 at ¶ 6).

she would only be charged for one firm and was never told that there would be a difference in the amount of legal fees or costs charged due to the involvement of KLF&B.[8] (*Id*. at 22:23–24:4). In contrast, Mr. Ball alleged that he met with Ms. Williams on May 29, 2019 at the Ciecka Law Firm in Pennsauken, New Jersey, and the purpose of the meeting was, in part, to discuss "what [Mr. Ball] would charge as a fee if [he] were retained to represent the family. . . ." (Ball Certification, ECF No. 362-1 at ¶¶ 3–4). Notably, however, Mr. Ball does not allege that such a discussion *actually* occurred or provide any details in that respect.[9] More importantly, this discussion allegedly took place months *prior* to the execution of at least one of the KLF&B Agreements. There is also no evidence that contradicts Ms. Williams' testimony that the significant and material differences between the Ciecka Agreement and the KLF&B Agreements or the Law Firms' subsequent Co-Counsel Agreement, as outlined below, were never discussed with Plaintiffs.

**E. The Terms of the KLF&B Agreement**

The KLF&B Agreement differed materially from the Ciecka Agreement in several ways. First, it provided for a 40–50% contingency fee depending upon when a settlement or recovery

[8] As further outlined in Section III.C, the Court views the Law Firms' failure to make a "full and complete disclosure of all charges which may be imposed" as a violation of their ethical duties. *Balducci v. Cige*, 223 A.3d 1229, 1240–41 (N.J. 2020). Consequently, the KLF&B Agreement, which is clearly contrary to New Jersey law with respect to contingency fees, is also unenforceable as against public policy.

[9] This statement by Mr. Ball was submitted in a supplemental certification *after* the August 22, 2024 hearing. This was not requested by the Court, nor was leave granted for its submission, and since it was provided after the hearing, the Court did not have the opportunity to further probe the credibility of this representation. In addition, while the Court held a status conference on October 10, 2024, Mr. Ball failed to appear and thus the Court had no opportunity to do so at that time. Regardless, the Court, without hesitation, finds Ms. Williams' testimony credible.

was made. Specifically, the Agreement stated:

> 2. The Client assigns to Firm an undivided interest in the Claims as follows:
>
> (a) Forty percent (40%) of any Recovery obtained before suit is filed;
>
> (b) Forty-five percent (45%) of any Recovery after suit is filed;
>
> (c) Fifty percent (50%) after notice of any appeal is filed.

(*See e.g.*, ECF No. 325-3 at ¶ 2). Thus, the KLF&B Agreement provided for a fee far in excess of Rule 1:21-7's sliding scale for contingency fees and does not reference the reduced fee on minor cases.

Second, the KLF&B Agreement included (1) a choice of law provision stating it was governed by Texas law; (2) a forum selection clause requiring any disputes to be filed in Harris County, Texas; and (3) a binding arbitration clause as set forth below:

> **8. Resolution of Disputes/Arbitration: Any and all disputes, controversies, claims or demands arising out of or relating to this Agreement or any provision hereof, the providing of services by Firm to Client, or in any way relating to the relationship between Firm and Client, whether in contract, tort or otherwise, at law or in equity, for damages or any other relief, shall be resolved by binding arbitration pursuant to Chapter 171 of the Texas Civil Practice & Remedies Code and in accordance with the Commercial Arbitration Rules then in effect with the American Arbitration Association. Any such arbitration proceeding shall be conducted in Harris County, Texas. This arbitration proceeding shall be enforceable in either federal or state court in Harris County, Texas. Any party to any award rendered in such arbitration proceeding may seek a judgment upon the award and that judgment may be entered by any federal or state court in Harris County, Texas having jurisdiction.**

(*Id.* at ¶ 8).

Finally, the KLF&B Agreement allowed KLF&B to hire associate counsel, and Ciecka Law Firm and KLF&B executed a Co-Counsel Agreement on May 30, 2019 to share the fees recovered in this case on a fifty-fifty basis. (ECF No. 362-5). This appears to have been in violation of the KLF&B Agreement itself, which required Plaintiffs to "consent in writing" to such an arrangement after being advised of the identity of the lawyer or law firm involved, how the fees

will be divided, and the share of the fee that each lawyer or law firm will receive. (ECF No. 325-3 at ¶ 9). While KLF&B produced an executed Co-Counsel Agreement, there is no evidence that Plaintiffs consented "in writing" or that they were ever advised of the details of the Agreement. Further, aside from the KLF&B Agreement, the Law Firms had an independent obligation to notify Plaintiffs of any fee division under New Jersey Rule of Professional Conduct 1.5(e). Again, the Law Firms did not submit any evidence that Plaintiffs were informed of the details of the Co-Counsel Agreement or its terms beyond the boilerplate provision in the KLF&B Agreement.

### F.  The Re-Filing of Litigation in Pennsylvania

On October 25, 2019, Ciecka Law Firm filed suit on behalf of Plaintiffs against First Student *only* in the Philadelphia Court of Common Pleas. (Ex. A, ECF No. 1 at 6). This Complaint, like the first, was signed by Mr. Urban, under Ciecka Law Firm's New Jersey address. However, the Complaint inexplicably omitted facts that are plead—for good reason—in nearly every single personal injury case. Specifically, the Complaint failed to disclose that:  (1) the accident occurred in New Jersey; (2) at the time of the accident, Plaintiffs resided in New Jersey; and (3) at the time of filing, Plaintiffs remained New Jersey residents.[10]

On November 15, 2019, First Student removed the case to the Eastern District of Pennsylvania based on diversity jurisdiction. (Notice of Removal, ECF No. 1 at 1–2). Not surprisingly, First Student then filed a Motion to Dismiss for lack of jurisdiction and improper venue on November 22, 2019. (ECF No. 6). While the Motion to Dismiss was pending, Mr. Ball

---

[10]  While Plaintiffs executed a lease for a property in Philadelphia, PA on October 25, 2019, Plaintiffs did not move until sometime "thereafter." (Williams Certification, ECF No. 325-30 at ¶ 3).

filed a motion seeking *pro hac vice* admission to the Eastern District of Pennsylvania via Ciecka Law Firm. (ECF No. 9).[11] On January 21, 2020, the Eastern District granted First Student's Motion to Dismiss as to two of the First Student entities and transferred the remainder of the case to the District of New Jersey. (ECF No. 18).

**G. The First Settlement with McGough and Approval of Same**

In late November 2019—while First Student's Motion to Dismiss and/or Transfer was still pending in the Eastern District of Pennsylvania—Mr. Ball reached an agreement in principle with McGough to settle the claims against it for $[redacted]. (Ball Certification, ECF No. 362-1 at ¶ 11).[12] On January 22, 2020, Ciecka Law Firm filed two Petitions for Leave to Settle or Compromise Action on behalf of each of the Minor Plaintiffs in the Court of Common Pleas of Philadelphia County, Orphans' Court Division (the "Petitions"). (ECF Nos. 325-6, 325-7). The Law Firms made this filing in the Orphans' Court, even though the Eastern District of Pennsylvania had transferred the First Student case to this Court the day prior, meaning there was pending, related litigation in the District of New Jersey regarding the same accident. The Petitions, like all other documents previously filed, were signed by Mr. Urban using Ciecka Law Firm's New Jersey address. (ECF Nos. 325-6 at 3, 325-7 at 3). The Petitions proposed a split of the "aggregate" recovery amongst Plaintiffs as follows:

Minor Plaintiff L.H.: $[redacted]

[11] Mr. Ball's *pro hac vice* application to the Eastern District of Pennsylvania was granted on December 9, 2019. (ECF No. 11).

[12] The Law Firms were unable to provide the specific date on which a settlement was reached. It is incredulous that a settlement in such an amount was not confirmed in a writing, whether it be a formal letter or an email with McGough or Plaintiffs.

Minor Plaintiff La.H.: $
Wykeya Williams: $
Lamont Wilbert Hannah: $



(ECF Nos. 325-6 at ¶ 9, 325-7 at ¶ 9).

While the Petitions disclosed that the accident occurred in New Jersey, (ECF Nos. 325-6 at ¶ 3, 325-7 at ¶ 3), Ciecka Law Firm did not disclose the fact that Plaintiffs were New Jersey residents at the time of the accident or that the Law Firms represented Plaintiffs in a related action that was currently pending in the District of New Jersey.

Of greater concern, Ciecka Law Firm never disclosed the existence of the Ciecka Agreement to the Philadelphia Orphans' Court,[13] and its filings during the settlement approval process blatantly and flagrantly violated both the Agreement itself and Rule 1:21-7 in several respects. First, Ciecka Law Firm did not disclose that it had agreed, pursuant to Rule 1:21-7, that any contingency fee collected would be limited to 25% of any recovery obtained on behalf of the Minor Plaintiffs.[14] Instead, Ciecka Law Firm requested that the Philadelphia Orphans' Court approve a 33 1/3% contingency fee on the portion of the settlement allocated to the Minor

[13] While the Ciecka Agreement was never terminated and therefore controls, it is worth noting that Ciecka Law Firm also failed to provide the Philadelphia Orphans' Court with the KLF&B Agreement or even reference its existence. It is inconceivable, and no explanation has even been proffered, as to how Ciecka Law Firm could file the Petitions, seeking approval of a minor's settlement and attorneys' fees and costs therefrom, without disclosing or even referencing the existence of its or KLF&B's written fee agreement.

[14] In an attempt to give any benefit of the doubt to the Law Firms, the Court confirmed that the Petitions filed at ECF Nos. 325-6 and 325-7 included all of the documents filed with the Philadelphia Orphans' Court related to the McGough settlement and that no other documents were provided, and the Law Firms responded in the affirmative. (Oct. 17, 2024 Weir Ltr., ECF No. 375).

Plaintiffs.[15] (ECF Nos. 325-6 at ¶ 20, 325-7 at ¶ 20). Specifically, the Petitions filed on behalf of Minor L.H. and Minor La.H. stated, respectively:

> Counsel requests a fee in the sum of $[redacted], which is thirty-three and one-third percent (33 1/3%) of the net settlement payable to the minor Petitioner. . . .
>
> Counsel requests a fee in the sum of $[redacted], which is thirty-three and one-third percent (33 1/3%) of the net settlement payment to the minor Petitioner. . . .

(*Id.*).

Second, though not presented to the Philadelphia Orphans' Court for approval, the Law Firms took 40% in attorneys' fees from the gross amount of $[redacted] that was allocated to the parents, (Ex. B, ECF No. 335-2 at 7), in violation of Rule 1:21-7(d)'s mandate that 25% should apply to the aggregate settlement amount because it is a derivative action. *See* N.J. CT. R. 1:21-7(d) ("When joint representation is undertaken in both the direct and derivative action . . . the contingent fee shall be calculated on the aggregate sum of the recovery."). Additionally, by disaggregating the settlement and *separately* computing its fee on *each* of the amounts distributed to the Plaintiffs—on what Mr. Urban himself referred to as an "aggregate" recovery, (Petitions, ECF Nos. 325-6 at ¶ 8, ECF 325-7 at ¶ 8)—the Law Firms evaded applying Rule 1:21-7(c)'s sliding scale to the $[redacted] total settlement and thus collected a larger than allowable fee.[16]

Finally, the Law Firms did not first deduct costs from the portion of the settlement allocated

---

[15] Unlike New Jersey, Pennsylvania has no restrictions on contingency fees for minors.

[16] As explained further in Section II, Rule 1:21-7(c)'s sliding scale calculates attorneys' fees by applying 33 1/3% to the first $750,000 recovered; 30% on the next $750,000 recovered; 25% on the next $750,000 recovered; and 20% on the next $750,000 recovered. By disaggregating the settlements paid to each individual Plaintiff, both in the Petitions and their submissions to this Court, (*see e.g.*, April 11, 2024 Ball Ltr.), the Law Firms impermissibly evaded Rule 1:21-7(c)'s sliding scale and its application to aggregate recoveries.

to the parents, in violation of Rule 1-21-7(d)'s requirement that attorneys' fees be calculated on the net recovery, as well as the explicit terms of the Ciecka Agreement, which provided that the attorneys' fees would be based on the "total recovered on your behalf, minus your costs and expenses. . . ." (ECF No. 325-22 at ¶ 4); *see also* N.J. Ct. R. 1:21-7(d) ("The permissible fee provided for in paragraph (c) shall be computed on the net sum recovered after deducting disbursements in connection with the institution and prosecution of the claim. . . .").

The Philadelphia Orphans' Court approved the Petitions on March 2, 2020 and March 13, 2020. (ECF Nos. 325-8, 325-9). This Court places no blame upon that court for doing so because, due to the aforementioned material omissions and misrepresentations, the Orphans' Court never had the opportunity to consider the provisions of the Ciecka Agreement, the KLF&B Agreement, whether the Petitions should have been filed in this District with the then pending litigation, or whether New Jersey law applied. As such, there was no analysis of whether the Law Firms' request complied with Rule 1:21-7's sliding scale or reduced fee for minors, or whether the request complied with the Ciecka Agreement or KLF&B Agreement.[17]

[17] While the involvement of KLF&B in the preparation of the Petitions is unclear, because Mr. Ball claims to have represented Plaintiffs since May 2019 and that he himself reached the settlement with McGough, (Ball Certification, ECF No. 362-1), the Court presumes that he, and others at KLF&B, were aware of the Petitions and the fees and costs requested therein on their firm's behalf. Therefore, KLF&B had an obligation to ensure they were proper in all respects.

As to Minor Plaintiff L.H., a 33 1/3% fee was collected as follows:

| Name | Amount |
|---|---|
| | $ |
| a) Kaster, Lynch, Farrar and Ball (counsel costs) | $ |
| b) Law Offices of Vincent J. Ciecka (counsel costs) | $ |
| c) Kaster, Lynch, Farrar and Ball and Law Offices of Vincent J. Ciecka (split 50/50) (counsel fee) | $ |
| d) Law Offices of Vincent J. Ciecka to hold in escrow pending resolution of outstanding medical bills (outstanding medical bill) | $ |

f) The balance, the sum of $ payable to , shall be distributed as follows:

(ECF No. 325-9 at 2).

As to Minor Plaintiff La.H., a 33 1/3% fee was collected as follows:

| Name | Amount |
|---|---|
| | $ |
| a) Kaster, Lynch, Farrar and Ball (counsel costs) | $ |
| b) Law Offices of Vincent J. Ciecka (counsel costs) | $ |
| c) Kaster, Lynch, Farrar and Ball and Law Offices of Vincent J. Ciecka (split 50/50) (counsel fee) | $ |
| d) Law Offices of Vincent J. Ciecka to hold in escrow pending resolution of outstanding medical bill (outstanding medical bill) | $ |

e) The balance, the sum of $ , payable to the Settlement Trust, and administered by Pacific Life Insurance Company, shall be distributed as follows:

(ECF No. 325-8 at 2).

Finally, as noted above, the Law Firms took a 40% fee on the $[redacted] recovery allocated to the parents, calculated on the gross recovery, rather than the net recovery after deduction of costs. (Ex. B, ECF No. 335-2 at 7).

### H. The First Student Litigation and the Court's Learning of the McGough Settlement

Following the Eastern District of Pennsylvania's January 21, 2020 Order transferring the remainder of the case to the District of New Jersey, Mr. Ball filed for *pro hac vice* admission to this Court via Ciecka Law Firm on February 13, 2020. (ECF No. 23). The Court granted his application on April 7, 2020. (ECF No. 31). Of particular note, by seeking and being granted *pro hac vice* admission, Mr. Ball agreed to be bound by the New Jersey Rules of Professional Conduct and not to take any fee in excess of that permitted under New Jersey law. (ECF No. 23 at ¶ 8); *see also* L.CIV.R. 101.1(c)(4) (a "lawyer admitted *pro hac vice* is deemed to have agreed to take no fee in any tort case in excess of New Jersey Court Rule 1:21-7 governing contingent fees."). Yet, while his motion for *pro hac vice* admission was pending in this District, the Petitions, which blatantly violated Rule 1:21-7 and the Ciecka Agreement, remained pending in the Philadelphia Orphans' Court and were never disclosed to this Court.

After several years of litigation and summary judgment motions, the Court inquired as to the status of any settlement discussions, and it was at this time—on January 29, 2024, the date the Court issued its ruling denying summary judgment—that the Court first learned of the details of the McGough settlement. (*See* ECF No. 302). To evaluate Plaintiffs' then settlement demand, the Court made a number of inquiries as to the amount of the McGough settlement, the attorneys' fees taken, the net monies received by Plaintiffs, and when and by which court that settlement had been

approved. The purpose of the Court's inquiry at that time was simply to understand what monies Plaintiffs had already recovered and how they were distributed to evaluate potential resolution of the instant matter. Yet, neither Ciecka Law Firm nor KLF&B could answer the Court's questions. Nevertheless, the Law Firms, specifically Mr. Urban and Mr. Ball, verbally and unequivocally assured the Court that the fee taken was proper and complied with Rule 1:21-7.

Because the Law Firms were unable to provide any details, the Court directed the Law Firms to make an *ex parte* submission with documents and other information related to the McGough settlement. (Tr., ECF No. 327 at 4:24–5:8). That was the beginning of what has now become a ten-month saga to determine exactly what occurred with respect to the McGough settlement. Indeed, all the facts set forth above were revealed to the Court only *after* it began making repeated inquiries of the Law Firms and were provided to the Court in piecemeal fashion with less than full transparency amidst continued, unsupported assertions that the fee collected was "correct and proper in all respects."[18] (March 15, 2024 Ball Ltr., ECF No. 325-35 at 2). After reviewing the McGough settlement documents, it was immediately clear to this Court that the fee collected by the Law Firms was anything but correct and proper.

To address its concerns, the Court held a conference on March 21, 2024 and required the Minor Plaintiffs' parents to be present. (ECF No. 323). During the conference, the Court expressed

---

[18] Specifically, Mr. Ball asserted in a March 15, 2024 *ex parte* letter that he was "confident" in his evaluation that the correct fee was taken but nevertheless had "retained counsel to give our firm an opinion on this issue and if counsel finds that our fee was improper in any respect, we will refund any portion of the fee that may be in excess of what the law permits." (ECF No. 325-35 at 2). As outlined further below, the Law Firms retained Walter Weir, Jr. and shortly thereafter, changed their position, stating they intended to refund a portion of the attorneys' fees from the McGough settlement with interest.

its concerns that the attorneys' fees taken on the McGough settlement may have violated Rule 1:21-7 and notified the parties that it intended to appoint a special master pursuant to Federal Rule of Civil Procedure 53, and/or a *guardian ad litem* for the Minor Plaintiffs to review the entire matter. (Tr., ECF No. 327 at 5:9–6:25). As required by Rule 53, the Court provided the parties with an opportunity to provide names of potential special masters.

On March 29, 2024, less than two weeks after the conference where the Court expressed its concerns and intent to appoint a special master and/or *guardian ad litem*, First Student and Plaintiffs suddenly reached a settlement for $[redacted]. (ECF No. 326; *see also* Mot. Approve Settlement, ECF No. 333 at 3). On April 11, 2024, shortly after reaching the settlement with First Student, the Law Firms submitted an *ex parte* letter to the Court stating that they intended to voluntarily refund Plaintiffs the difference in the attorneys' fees collected on the McGough settlement and those permitted by Rule 1:21-7, plus interest. Thereafter, on April 26, 2024, the Law Firms confirmed the same via their newly retained counsel, Mr. Weir. (ECF No. 328-2). Based on the Law Firms' stated intent, the Court presumed this issue would be quickly resolved and Plaintiffs made whole. As such, the Court did not proceed with the appointment of a special master or *guardian ad litem*.

Unfortunately, that is not what occurred. In his April 11, 2024 *ex parte* submission, Mr. Ball stated that, based on his calculations, Plaintiffs should be refunded $400,460.08, including interest. Then, in the Law Firms' April 26, 2024 submission, Mr. Weir stated that Plaintiffs were actually owed $565,313.01, *plus interest*. (ECF 328-2 at 3). In both submissions, however, the Law Firms continued to misapply Rule 1:21-7. Specifically, the Law Firms (1) calculated attorneys' fees on the parents' recovery using 33 1/3%, even though the parents' claims were

derivative of the Minor Plaintiff's claims; and (2) evaded the sliding scale and application for a "reasonable fee" under Rule 1:21-7(c)(5) by disaggregating the total settlement and calculating attorneys' fees based on the amounts allocated to the individual Plaintiffs. Thus, the Court's concerns as to these issues and the precise amount to be refunded to the Plaintiffs remained outstanding at the time of the filing of the instant Motion.

### I. Filing of Motion to Approve the First Student Settlement and Application for Attorneys' Fees and Costs

Plaintiffs filed the Motion to approve the First Student settlement on June 26, 2024, (ECF No. 332), and the Motion for Attorney Fees on the same day. (ECF No. 334). In the Motion for Attorney Fees, the Law Firms again submitted wholly different figures, this time asserting that Plaintiffs were owed $285,089.46 for the fees improperly taken on the McGough settlement,[19] plus interest. (ECF No. 335 at 24). Due to the vastly different figures provided by the Law Firms and concerns related to the deficiencies in the pending Motion for Attorney Fees, the Court held a conference on August 1, 2024. (ECF No. 343). The Law Firms submitted additional materials in response to the Court's questions and concerns on August 13, 2024. (ECF Nos. 346, 348, 350).

On August 22, 2024, the Court held a *Friendly* hearing pursuant to New Jersey Court Rule

[19] This precipitous drop in the fees requested is largely due to the fact that in its first two submissions, (April 11, 2024 Ball Ltr.; April 26, 2024 Weir Ltr., ECF No. 328-2 at 3), the Law Firms did not include any calculations regarding a reasonable fee under Rule 1:21-7(f), whereas in its Motion for Attorney Fees, (ECF No. 335), the Law Firms assumed they would receive 25%, despite never making such an application.

4:44, which requires court approval of settlements involving minors.[20] (ECF No. 352). The Court heard testimony as to the First Student settlement and current medical condition of the Minor Plaintiffs. The Court also raised several issues pertaining to the now *fourth* recalculation of the amount that should be refunded to Plaintiffs for attorneys' fees improperly taken from the McGough settlement, as well as the request for attorneys' fees and costs on the First Student settlement. Specifically, with respect to the First Student settlement, the Court asked the Law Firms to address: (1) whether Rule 1:21-7 required that the 25% minor fee cap be applied to the aggregate settlement amount or if a higher fee could be applied to the parents' allocated portion of the recovery (the same issue the Court raised earlier as to the McGough settlement); (2) the failure of either firm to keep contemporaneous time records from which the Court could assess the reasonableness of the requested fee as compared to the amount of time expended; and (3) whether the costs sought by KLF&B for expenses for travel to and from Texas—which exceeded $50,000 on the two settlements combined—were reasonable.[21] (Tr., ECF No. 359 at 68:19–70:5).

After the hearing, the Court approved the First Student settlement as to the gross sum, the

---

[20] Despite already submitting *three* different calculations of the refund owed to Plaintiffs, the Law Firms nevertheless advised the Court on the morning of the August 22, 2024 hearing it had identified two more errors, which inured to Plaintiffs' benefit in excess of $100,000. (Tr., ECF No. 359 at 63:23–64:7).

[21] The Court's concern in this regard was amplified by the testimony of Ms. Williams that she was not informed about the terms of the KLF&B Agreement and its material differences from the Ciecka Agreement or that Plaintiffs would be charged for the significant costs for KLF&B to travel between Texas and New Jersey. (Tr., ECF No. 359 at 22:23–24:4; 26:11–19; 41:8–15).

allocation among Plaintiffs, and the proposed structured settlements for the Minor Plaintiffs.[22] (ECF No. 352). The Court reserved decision on the Motion for Attorney Fees and requested supplemental briefing to support the Law Firms' positions on the aforementioned issues. (*Id.*). On September 23, 2024, rather than supplemental briefing, the Law Firms submitted a letter (1) yet again recalculating the attorneys' fees to be refunded as to the McGough settlement, this time applying a 25% fee to the aggregate recovery across the board, along with the sliding scale;[23] (2) providing information as to the number of lawyers who attended each deposition and approximate time thereof; and (3) withdrawing their request for travel expenses incurred by KLF&B. (ECF No. 365).

Thus, what now remains for the Court to decide is: (1) considering the Law Firms' agreement to recalculate and refund the attorneys' fees and costs related to the McGough settlement, what is the proper calculation pursuant to Rule 1:21-7, what monies are due to

[22] The Court later issued an Order approving a partial release of the settlement funds on October 11, 2024 to secure annuities on behalf of the Minor Plaintiffs. (ECF No. 372). Such a piecemeal approach at the proverbial eleventh hour was necessitated by the fact that the Law Firms never advised the Court that there was a deadline to fund the annuities at their then current rates, and the failure to do so would have resulted in a significantly lesser amount of monies for Minor Plaintiffs. (Oct. 7, 2024 Weir Ltr., ECF No. 367; Tr., ECF No. 371). The Court commends Defendant's counsel and its insurers for their cooperation in this regard.

[23] While the Law Firms' letter states that the Court instructed it to "[p]rovide the fee calculation on the entire settlement with the parents and the minors at 25%," (ECF No. 365 at 1), that is not accurate. Rather, the Court advised the Law Firms that it believed that was the appropriate application of Rule 1:21-7 but provided the Law Firms with an opportunity to submit supplemental briefing, specifically as to their position that, where an adult's claim is derivative of a minor's claim and part of an aggregate settlement, their request to take a 33 1/3% fee on the portion of the settlement allocated to the parents was permissible. (Tr., ECF No. 359 at 61:7–62:17). The Law Firms did not do so. Thus, the Court assumes that the Law Firms were unable to find any such authority and have waived any further objection as to this issue.

Plaintiffs, and how should those monies be distributed; (2) whether, and to what extent, the Court should approve the attorneys' fees and costs sought by the Law Firms as to the First Student settlement under Rule 1:21-7, including whether any fee over $3,000,000 should be awarded and if so, the appropriate amount thereof; and (3) whether the overall fee requested as to the First Student settlement is reasonable. While the legal issues before the Court are rather limited in scope, the preceding detailed factual history is unfortunately necessary to have full context for the Court's discussion and basis for its decision as set forth below.

## II. LEGAL STANDARD

New Jersey Rule 1:21-7(c) governs the fee that an attorney may charge a client when the attorney represents the client in a personal injury action based on a contingency fee agreement. The rule sets forth the maximum contingency fee an attorney may contract for in tort cases:

> (1) 33 1/3% on the first $750,000 recovered;
>
> (2) 30% on the next $750,000 recovered;
>
> (3) 25% on the next $750,000 recovered;
>
> (4) 20% on the next $750,000 recovered; and
>
> (5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; and
>
> (6) where the amount recovered is for the benefit of a client who was a minor or mentally incapacitated when the contingent fee arrangement was made, the foregoing limits shall apply, except that the fee **on any amount recovered by settlement before empaneling of the jury or, in a bench trial, the earlier to occur of plaintiff's opening statement or the commencement of testimony of the first witness, shall not exceed 25%.**

N.J. CT. R. 1:21-7(c) (emphasis added). Subsections (d) and (i) of Rule 1:21-7 then further clarify that, where there are multiple plaintiffs within a single action and/or multiple settlements in a multiple party action, the settlement amounts must be aggregated in certain scenarios—namely,

when joint representation is undertaken in both the direct and derivative action or when the claims arise out of the same set of facts. Specifically, Rule 1:21-7(d) provides, in relevant part, that "[w]hen joint representation is undertaken in both the direct and derivative action . . . the contingent fee shall be calculated on the aggregate sum of the recovery." Subsection (i) of the Rule then goes on to state that, "[w]hen representation is undertaken on behalf of several persons whose respective claims, whether or not joined in one action, arise out of the same transaction or set of facts or involve substantially identical liability issues, the contingent fee shall be calculated on the basis of the aggregate sum of all recoveries. . . ."

Accordingly, counsel must apply to the court for a "reasonable fee" under Rule 1:21-7(c)(5) where the aggregate recovery exceeds $3,000,000 across (1) both the direct and derivative action and/or (2) multiple party actions that arise from the same set of facts or involve substantially identical liability issues. The amount of the fee to be awarded in excess of $3,000,000 is to be determined by the court in light of all the circumstances. *See King v. Cty. of Gloucester*, 483 F. Supp. 2d 396, 398 (D.N.J. 2007) (citing *Ehrlich v. Kids of North Jersey, Inc.*, 769 A.2d 1081, 1084 (N.J. Super. App. Div. 2001)).

In determining a reasonable fee, the Court is guided by eight factors as laid out in the New Jersey Rules of Professional Conduct:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed on the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

R.P.C. 1.5(a); *see also* N.J. CT. R. 1:21-7(e) ("In all cases contingent fees charged or collected must conform to [Rule] 1.5(a)."); *Nikoo v. Cameron*, No. 18-11621, 2021 WL 672930, at *2 (D.N.J. Feb. 22, 2021) (applying Rule 1.5(a) to determine a reasonable fee).

"Two especially important factors courts consider in determining a reasonable fee are whether 'the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming.'" *King*, 483 F. Supp. 2d at 399 (citing *Wurtzel v. Werres*, 493 A.2d 611, 614 (N.J. Super. Ct. App. Div. 1985)). Courts generally find that exceptional lawyering exists where either: (1) new law is established; (2) trial, appeal, and retrial are required; or (3) the case presented significant obstacles to counsel and success appeared unlikely. *Busche v. Nat'l R.R. Passenger Corp.*, No. 18-10322, 2020 WL 5988267, at *4–5 (D.N.J. Oct. 9, 2020) (citing *Buckelew v. Grossbard*, 461 A.2d 590, 592 (N.J. Super. Ct. Law Div. 1983), *aff'd*, 469 A.2d 518 (N.J. Super. Ct. App. Div. 1983); *Anderson v. Conley*, 501 A.2d 1057, 1066 (N.J. Super. Ct. App. Div. 1985); *Estate of McMahon*, No. 05-4389, 2007 WL 2688557, at *3 (D.N.J. Sept. 7, 2007).

Where the court finds either exceptional lawyering or that the case was unusually time consuming, "it will generally award a fee approximately at or above 1/3 of the excess amounts recovered." *Busche*, 2020 WL 5988267, at *7 (citations omitted). Where these factors are not present, the excess fee will typically range from 20% to 25% of the excess amounts recovered. *Id.*

## III. DISCUSSION

### A. The Proper Recalculation of the McGough Settlement

There can be no doubt, whether based upon the Ciecka Agreement or Rule 1:21-7, that the attorneys' fee requested and received by the Law Firms as to the McGough settlement was improper. Rule 1:21-7 plainly applies, and the Law Firms have not provided any authority to support a different conclusion. Thus, the Court determines the following with respect to the recalculation of the McGough settlement: (1) Rule 1:21-7 governs the calculation of the attorneys' fee; (2) the attorneys' fee must be calculated based upon the aggregate recovery of $[redacted] (less approved costs) pursuant to Rule 1:21-7(d); and (3) the Law Firms should have applied for a reasonable fee for the amount in excess of $3,000,000.

#### (i) Rule 1:21-7 Applied to the McGough Settlement

Rule 1:21-7 governed the calculation of the attorneys' fee as to the McGough settlement. No credible legal or factual argument otherwise has, or can, be made.[24] While the Law Firms initially argued that Rule 1:21-7 did not apply because "[a]t no time did Plaintiffs' claims against McGough involve any New Jersey Court," Mr. Ball had not yet been admitted *pro hac vice* in a New Jersey Court, and KLF&B never performed any work in New Jersey, these arguments lack

[24] Indeed, the Law Firms rescinded any argument to the contrary in their Motion for Attorney Fees, agreeing that the fee in both cases should be determined in accordance with Rule 1:21-7, in part, because the Plaintiffs moved back to New Jersey. (ECF 335 at 8).

merit and the cases the Law Firms cite are inapposite.[25] (ECF No. 325-18 at 3–4). In particular, the Law Firms' arguments are undermined by the fact that—despite their claims that the McGough settlement was an "out-of-state" case that had nothing to do with New Jersey—all of the filings used Ciecka Law Firm's New Jersey address, (*see e.g.* Compl., ECF No. 1; Petitions, ECF Nos. 325-6, 325-7), and the settlement disbursement sheets were prepared on Ciecka Law Firm's letterhead for its New Jersey offices. (ECF No. 328-2 at 4–16). Further, KLF&B traveled to the New Jersey law office of Ciecka Law Firm to meet with Plaintiffs who were then, and at all relevant times, New Jersey residents. (Ball Certification, ECF No. 362-1 at ¶¶ 3–4; Williams Certification, ECF No. 325-30 at ¶¶ 2–3).

More importantly, such arguments wholly ignore the fact that Ciecka Law Firm executed a fee agreement with Plaintiffs on October 30, 2017. (ECF No. 325-22). The Ciecka Agreement, which by its terms complied with Rule 1:21-7, was never terminated and preexisted the KLF&B Agreements, which were executed years later in May and October 2019. (ECF Nos. 325-3, 325-4, 325-5). As such, the Ciecka Agreement controlled the allowable fee.

Ciecka Law Firm has not provided, nor can the Court conceive, any explanation whatsoever for disregarding not only Rule 1:21-7, but its own fee agreement, as to the McGough

[25] Specifically, KLF&B's citation to *Petroy v. Trichon*, 694 A.2d 597 (N.J. Super. Ct. App. Div. 1997) and argument that this was a Pennsylvania case, (ECF No. 325-18 at 3), lacks factual and legal merit. Plaintiffs' claims cannot fairly be characterized as anything other than a New Jersey case. Further, KLF&B fails to recognize that the claim previously filed against McGough in Pennsylvania was dismissed for lack of personal jurisdiction by the Pennsylvania Court of Common Pleas. For the reasons set forth herein, such claims should have been properly filed in New Jersey. As such, Ciecka Law Firm's decision to file the initial suit in Pennsylvania is of no relevance, and *Petroy* supports the application of Rule 1:21-7 here.

settlement. Indeed, the fact that Ciecka Law Firm did not disclose the Ciecka Agreement and other undisputedly material facts to the Philadelphia Orphans' Court and requested attorneys' fees that were in blatant violation of its Agreement and Rule 1:21-7, makes it impossible for the Court to find that this was an innocent mistake or oversight. Rather, it can only be construed as a knowing misrepresentation and deliberate scheme by the Law Firms to obtain a significantly larger fee than permitted by New Jersey law and Ciecka Law Firm's own agreement.

But a New Jersey attorney, having already executed a proper fee agreement with a client under New Jersey law, cannot be permitted to swindle clients, especially those that lack sophistication with the legal system, into executing "new" fee agreements with out-of-state attorneys to evade Rule 1:21-7 and obtain a larger fee. Such a result would run counter to the strong public policy underlying Rule 1:21-7 and New Jersey's interest in protecting its citizens "from overreaching by attorneys and excessive legal fees." *Peteroy*, 694 A.2d at 599 (citing *Am. Trial Laws. Ass'n v. N.J. Sup. Ct.*, 316 A.2d 19 (N.J. Super. Ct. App. Div. 1974); *see also Eagan v. Jackson*, 855 F. Supp. 765, 779 (E.D. Pa. 1994) (applying Rule 1:21-7 to fee agreement between New Jersey lawyer and New Jersey client for lawsuit filed in Pennsylvania for injury suffered in Guatemala); *Bernick v. Frost*, 510 A.2d 56, 59 (N.J. Super. Ct. App. Div. 1986) (applying Rule 1:21-7 to contract between New Jersey lawyer and New Jersey client for lawsuit filed in New York for injury suffered in New York). Indeed, by ignoring its own fee agreement, Ciecka Law Firm not only disadvantaged Plaintiffs, but substantially enhanced the legal fees it would recover by virtue of the KLF&B Agreement's higher contingency fees and the provision in the Co-Counsel Agreement allowing it to share in said fees.

Moreover, this case presents the complete opposite factual scenario from that in *Gore v.*

*Nagel*, 858 F. App'x 44 (3d Cir. 2021), further bolstering the Court's conclusion. There, the Third Circuit affirmed the district court's refusal to apply Rule 1:21-7 where the plaintiff was a resident of Texas, was injured in Texas, hired lawyers in Texas, and a Texas court approved the settlement because the "only link to New Jersey" was the filing of a "placeholder case" in New Jersey via local counsel before abandoning it. *Id*. at 46–47. The court noted that the New Jersey counsel was merely local counsel and did not execute fee agreements with the plaintiffs and rejected the plaintiffs' argument that New Jersey always applies its fee cap, stating:

> Not so. True, the cap protects any litigant who properly seeks redress in New Jersey courts. *Du-Wel Prods., Inc. v. U.S. Fire Ins. Co.*, 236 N.J. Super. 349, 565 A.2d 1113, 1120 (N.J. Super. Ct. App. Div. 1989). But by any litigant, *Du-Wel* meant anyone paying for use of New Jersey courts—**not anyone paying for an out-of-state case but trying to escape that fee in New Jersey**.

*Id*. at 46 (emphasis added) (alterations and quotations omitted). Here, the Law Firms' conduct in a case so intricately related to New Jersey in every possible way—including the execution of a fee agreement between a New Jersey law firm and New Jersey residents on behalf of a minor catastrophically injured in New Jersey—presents the exact opposite scenario and appears to have been an attempt to escape New Jersey's fee cap.

Finally, "[t]he premise behind Rule 1:21-7 is that attorneys and their clients do not have equal bargaining power, and that clients consequently need protection from the courts with respect to contingent fee agreements." *Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 420 (3d Cir. 1995) (citations omitted). Therefore, the Court finds that Rule 1:21-7, and the public policy imbued within it with respect to a reduced fee on minor settlements and sliding scale contingency fees, governs the McGough settlement.

**(ii) Rule 1:21-7 Required the Fee to Be Calculated on the Aggregate Recovery**

Having firmly established that Rule 1:21-7 applies, the Rule required the fee in the McGough settlement to be calculated on the aggregate recovery of $[redacted] for two primary reasons: (1) Rule 1:21-7 expressly requires such; and (2) any other method of calculation would evade Rule 1:21-7's sliding scale.

Rule 1:21-7(d) states that "[w]hen joint representation is undertaken in both the direct and derivative action . . . the contingent fee shall be calculated on the aggregate sum of the recovery."[26] This mandate that attorneys' fees must be calculated based on the aggregate recovery is then further underscored in Rule 1:21-7(i), which states "[w]hen representation is undertaken on behalf of several persons whose respective claims . . . arise out of the same transaction or set of facts or involve substantially identical liability issues, the contingent fee shall be calculated on the basis of the aggregate sum of all recoveries. . . ." Accordingly, the plain language of Rule 1:21-7 requires that the reduced contingency fee for minors be applied to the entirety of the McGough settlement.

Additionally, New Jersey courts have emphasized that the sliding scale cannot be evaded by dividing settlements into different shares. Rather, where there is only one "recovery," the sliding scale must be "applied to the total amount received, nor [sic] matter how many beneficiaries are entitled to share in it." *McMullen v. Maryland Cas. Co.*, 317 A.2d 75, 80 (N.J. Super. Ct. App.

---

[26] Here, the parents' claims wholly derive from those of the Minor Plaintiffs and thus are a "derivative action" for purposes of Rule 1:21-7(d). *See Lockhart v. Willingboro High Sch.*, No. 14-3701, 2017 WL 4364180, at *8 (D.N.J. Sept. 29, 2017) (holding that parental loss of services of a minor child resulting from a defendant's negligence is a viable *per quod* claim and that "[a] *per quod* claim is a derivative cause of action whose viability depends on the existence of tortious conduct against the injured [child].").

Div. 1974), *aff'd*, 341 A.2d 334 (N.J. 1975); *see also Busche*, 2020 WL 5988267, at *8 (explaining that the sliding scale ensures that "the fee percentage goes down as the recovery increases" because "as the amount of the overall recovery goes up the risk increases that attorney's fees will represent a windfall to counsel far beyond the work actually done in the case."). Therefore, the Court finds that the attorneys' fees in the McGough settlement must be calculated based on the aggregate amount thereof.

**(iii) Rule 1:21-7 Required the Court to Approve Any Fee in Excess of $3,000,000**

Finally, Rule 1:21-7(c)(5) requires the court to approve a "reasonable fee" for settlements in excess of $3,000,000. Here, the Philadelphia Orphans' Court had no opportunity to consider this issue. In now proposing a recalculation of the fee, the Law Firms simply presume, despite their conduct as outlined herein, that they should have been awarded 25% on the recovery over $3,000,000. (Mot. Att'y Fees, ECF No. 335 at 24). But unlike its submissions with respect to the First Student settlement, they provide no factual or legal analysis to support that presumption. After considering the factors in New Jersey Rules of Professional Conduct 1.5, the Court does not agree that 25% is a reasonable fee, given the minimal amount of time expended on the case and the difficulty of the questions involved.

The Law Firms settled the McGough matter after filing a single complaint that was dismissed for lack of personal jurisdiction. (Attach. 7, ECF No. 325-7 at ¶ 5). The Law Firms then voluntarily discontinued the lawsuit and did not perform any additional briefing, discovery, depositions, or other similar work. (Praecipe to Discontinue, *Williams v. First Student, Inc.*, No. 180302496 (Apr. 25, 2019, Phila. Ct. C.P.)). Indeed, the Law Firms provide little to no information

as to what work was actually done to reach the McGough settlement, not even the date on which the settlement was reached. Moreover, in the Law Firms' own submissions related to the First Student settlement, they characterize the McGough matter as "straightforward" and a "clearer liability case" as compared to the claims against First Student, because the McGough bus actually struck the Minor Plaintiff. (Folkman Dec., ECF No. 341 at ¶ 10(p), (r)). Based upon these facts, coupled with the Law Firms' failure to properly apply for a "reasonable fee" and the conduct of the Law Firms outlined above, the Court finds that a reasonable fee as to the McGough settlement under Rule 1:21-7(c)(5) and New Jersey Rule of Professional Conduct 1.5 is 10% of the recovery in excess of $3,000,000. *See Puello v. Am. Home Mfg., LLC*, No 21-16950, 2024 WL 3792248, at *3 (D.N.J. June 12, 2024) (finding that a case that only required minimal motion practice was "neither especially difficult nor unusually time consuming"); *Anderson*, 501 A.2d at 1066 (finding case where an 18-year-old plaintiff was left quadriplegic by a car accident was "the type which is ripe for settlement" and did not require "exceptional skills"); *Estate of F.W. v. State, Div. of Youth & Family Servs.*, 942 A.2d 48, 56 (N.J. Super. Ct. App. Div. 2008) (explaining that the application requirement under Rule 1:21-7(c)(5) serves to "compl[y] with the procedural requirements of notice and of a hearing as stated in [Rule 1:21-7(f)]"); *Eagan*, 855 F. Supp. 765 (holding that attorneys' fees under Rule 1:21-7 may be forfeited when an attorney violates their duty of loyalty to client and duty of candor to court).

Thus, the amount of monies to be refunded to Plaintiffs must be recalculated by applying

a 25% attorneys' fee to the first $2,250,000 of the net settlement,[27] followed by a 20% attorneys' fee on the next $750,000, in accordance with Rule 1:21-7's sliding scale. The attorneys' fees on the amount in excess of $3,000,000 is awarded at 10%. The differential between that amount and the fees previously collected on the McGough settlement is to be refunded to Plaintiffs, plus interest to date in accordance with New Jersey Court Rule 4:42-11. The Law Firms shall calculate the final amount and allocate it amongst Plaintiffs pursuant to their proportionate share of the McGough settlement.

### B. The Requested Costs and Fees on the First Student Settlement[28]

In their Motion, the Law Firms request $[redacted] in attorneys' fees for the First Student settlement. (ECF No. 335 at 8). The Law Firms reached this figure by aggregating the McGough and First Student settlements, pursuant to Rule 1:21-7(i),[29] and multiplying the portion of the First Student recovery exceeding $3,000,000 by 25%, which they argue is a "reasonable fee" under subsection (c)(5) and the factors outlined in Rule of Professional Conduct 1.5. (*Id.*). Specifically, the Law Firms primarily argue that 25% is warranted based on (1) the extraordinary

[27] For clarity, the net settlement means the aggregate settlement amount ($[redacted]), less permissible costs and expenses. *See* N.J. CT. R. 1:21-7(d). Upon inquiry of the Court as to their propriety, the Law Firms voluntarily revised the costs taken in the McGough settlement to exclude tens of thousands of dollars in costs for travel to and from Texas and New Jersey and over $15,000 in "miscellaneous other" fees. (Tr., ECF No. 371 at 10:20–11:19).

[28] In his February 12, 2024 letter, Mr. Ball acknowledged Rule 1:21-7 would apply to any fee taken on the First Student settlement. (ECF No. 325-18 at 2). However, that was never an issue as Local Rule 101.1(c)(4) requires that attorneys admitted *pro hac vice* comply with Rule 1:21-7.

[29] As noted above, Rule 1:21-7(i) mandates that the contingency fee taken on claims "aris[ing] out of the same transaction or set of facts or involv[ing] substantially identical liability issues" must be based on "the aggregate sum of <u>all recoveries</u>." (emphasis added).

amount of time expended and superlative level of legal skill and expertise (Factor One); (2) the time limitations imposed by the client or circumstances (Factor Five); (3) the nature and length of their professional relationship with Plaintiffs (Factor Six); and (4) the experience, reputation, and ability of the lawyers involved, specifically Mr. Ball (Factor Seven). (*Id.* at 13–23). After analyzing the factors and considering all the circumstances, including what the Court perceives to be ethical misconduct by the Law Firms, the Court does not agree that 25% is a reasonable fee. Instead, it will award 15%.

Factor One, that is whether a case required exceptional skills or was unusually time consuming, is considered "especially important" to the Court's determination of a reasonable fee. *King*, 483 F. Supp. 2d at 399 (citing *Wurtzel*, 493 A.2d at 614). Here, the Court finds that no exceptional lawyering was present, nor did the case require an extraordinary amount of time. Therefore, this factor does not weigh in favor of the Law Firms' request for 25% in attorneys' fees.

Courts generally find that exceptional lawyering exists where (1) new law is established; (2) trial, appeal, and retrial are required; or (3) the case presented significant obstacles to counsel and success appeared unlikely. *Anderson*, 501 A.2d at 1066; *Busche*, 2020 WL 5988267, at *4–5 (citations omitted); *Estate of McMahon*, 2007 WL 2688557, at *3. None of these factors are present here.

Turning to the amount of time expended, the Court first observes that the Law Firms are unable to state, with any degree of reasonable certainty, how much time was actually spent on the case by either firm because they did not maintain contemporaneous time records. While not "fatal" to an application for a reasonable fee, *Estate of F.W.*, 942 A.2d at 55, such records are nevertheless customary and allow the Court to "assess the time and labor required to successfully conclude th[e]

matter." *Puello*, 2024 WL 3792248, at *3; *see also C.C. v. E. Camden Cty. Reg'l Sch. Dist.*, No. 15-5936, 2017 WL 1170832, at *7 n.3 (D.N.J. Mar. 29, 2017) (citing *Webb v. Board of Educ.*, 471 U.S. 234, 238 n.6 (1985) ("The use of contemporaneously recorded time records is the preferred practice to verify hours expended by counsel in connection with a counsel-fee application.").

While the Law Firms submitted declarations upon the Court's inquiry from Messrs. Sussen, Urban, and Ball regarding the work performed on the case in lieu of time records, (ECF Nos. 335-3, 335-4, 335-5), the Court will not afford these significant weight because "[t]he Third Circuit has noted the inherent and inevitable conflict that exists when an attorney seeks a fee pursuant to [Rule 1:21-7]." *King*, 483 F. Supp. 2d at 400 (citing *Mitzel*, 72 F.3d at 419–20). Therefore, the Court's analysis of whether the case involved an unusual amount of time is based primarily on the "Detail of Legal Services Provided." (ECF No. 335-7). However, an examination of this submission, coupled with additional requests for information from the Court, reveals that the case was not as time consuming as the Law Firms contend.

For example, the Law Firms argue that they took fifty-five lay witness depositions, (ECF No. 335 at 14), leading the Court to request that the Law Firms provide the actual length of each and the number of attorneys that attended. (ECF No. 365-2). Upon reviewing the information provided, eleven of the depositions were less than an hour, thirteen depositions were between 1–2 hours, twelve depositions were between 2–3 hours, and only nineteen depositions took more than three hours. *Id*. Indeed, three of the depositions lasted less than twenty minutes and one was *only eleven minutes long*. *Id*.

Additionally, while the Law Firms state that this was a "six-year work effort," (ECF No. 335 at 17), this belies the actual record. As outlined in the Background Section, the case against

First Student was filed on October 25, 2019 and settled on March 29, 2024. Therefore, what the Law Firms refer to as a "six-year effort," is more accurately a "four-and-a-half-year effort," at best.

A review of the docket further evidences the minimal amount of time expended. Namely, (1) there was minimal motion practice unrelated to the instant Motion; (2) only one attorney from Ciecka Law Firm, Mr. Urban, ever entered an appearance in this case; and (3) only five attorneys, Messrs. Ball, Bankston, Lynch, Farrar, and Koneru, were admitted *pro hac vice* from KLF&B. Moreover, while there may have been additional motion practice in the McGough case that is not reflected on this docket, the Law Firms were already partially compensated for their work on the prior settlement with McGough. With these considerations in mind, and without the benefit of time records, the Court is unable to find that the case was so unusually time consuming as to warrant 25%. *Compare Mitzel*, 72 F.3d at 419 (affirming award of only 20% of settlement where counsel devoted 5,100 attorney hours to litigation over four years), *with Norman v. Haddon Twp.*, No. 14-6034, 2018 WL 3536752 (D.N.J. July 23, 2018) (granting enhanced fee based upon extraordinary time spent where counsel provided detailed documentation as to the hours spent on the case which demonstrated even with the enhancement they were earning less than 1/4th of the time they invested); *see also Butterly v. Tamerlane Campground, Inc.*, No. 03-3352, 2007 WL 1827200 (D.N.J. June 22, 2007) (analyzing counsel's time records in determining whether and what fee to award in minor's case).

Turning to the remaining factors, the Law Firms submitted little to no argument regarding Factors Three (fee customarily charged in the locality for similar legal services) and Four (amount involved and results obtained). Nevertheless, the Court finds that these factors weigh in the Law

Firms' favor. Specifically, courts customarily award 20-25% in excess of $3,000,000 as a reasonable fee, *Busche*, 2020 WL 5988267, at *5, and the Court agrees with the Law Firms that $[redacted] was a favorable result for Plaintiffs.

Finally, for the reasons that follow, the Court finds that Factors Five, Six, and Seven do not weigh in the Law Firms' favor. Specifically, the Court finds that Factor Five (the time limitations imposed by the client or circumstances) may have weighed in the Law Firms' favor as to the McGough settlement due to the financial pressures then faced by Plaintiffs.[30] However, the same cannot be said of the First Student settlement. The Law Firms cannot simultaneously contend that this was a "six-year effort" and that there were "time limitations." Thus, Factor Five weighs against the Law Firms' application.

Turning to Factor Six, the Law Firms argue that they provided Plaintiffs with tremendous "support and guidance in navigating the urgent legal and medical issues they faced" and offer several examples. (ECF No. 335 at 18–20). While the Court commends this conduct, it is far overshadowed by the other conduct described herein and what the Court perceives to be the Law Firms' violation of their ethical duties to Plaintiffs. The Court will not ignore these facts. Therefore, the Court finds that this factor does not support the Law Firms' application for a 25% fee.

[30] Oddly, the Law Firms make the same argument under Factor Five (time limitations) as they do for Factor Two (preclusion of other employment). However, the Law Firms do not assert that either Ciecka Law Firm or KLF&B were precluded from taking other work, other than stating that the "case required the joint resources of two law firms to provide the workforce and financial resources necessary. . . ." (ECF No. 335 at 17). This is insufficient to meet the second factor and as such, the Court will not consider this argument in determining a reasonable fee.

Lastly, while Mr. Ball is certainly an accomplished attorney (Factor Seven), he is but one member of the team. Moreover, the Court finds that any accomplishments, whether belonging to Mr. Ball or another lawyer in the case, are again, overshadowed by the conduct of the Law Firms as detailed herein. As such, the Court finds that the seventh factor does not support the Law Firms' request. Accordingly, the Law Firms' request for 25% as a reasonable fee for the First Student settlement is denied. Rather, the Court finds that 15% is the appropriate percentage and will award $[REDACTED] in attorneys' fees.[31]

**C. Reasonableness of Overall Fee**

The Court's decision is further bolstered by the fact that the Law Firms' request for $[REDACTED] in attorneys' fees on the First Student settlement, for a total fee of $[REDACTED], is entirely unreasonable, not only under the Rule 1.5. factors as set forth above, but because of the substantial ethical concerns related to the conduct of the Law Firms. In this Court's view, the Law Firms' conduct has implicated, at a minimum, the following Rules of Professional Conduct: Rule 1.1 (as to fee agreements); Rule 1.4(c) (duty to communicate as related to Rule 1:21-7 and fee agreements); Rule 1.5(b) (duty to have a written fee agreement within a reasonable time of commencement of representation, to the extent KLF&B maintains it began representing Plaintiffs in May 2019 but did not execute fee agreements until five months thereafter); Rule 1.5(e) (requiring clients to be informed of fee division and overall reasonable fee); Rule 3.3 (candor towards the tribunal, both this Court and the Philadelphia Orphans' Court); and Rule 8.4(a), (c)

[31] The Court finds it is appropriate to determine what is a "reasonable fee" for the amount in excess of $3,000,000 under Rule 1:21-7(c)(5) separately for each settlement in this case given the stark differences in timing, work spent, and the underlying circumstances.

(misconduct).

The import of the ethical rules surrounding attorneys' fees and retainer agreements cannot be understated. In *Delaney v. Dickey*, 242 A.3d 257 (N.J. 2020), the New Jersey Supreme Court recently explained:

> all fiduciaries are held to a duty of fairness, good faith and fidelity, but an attorney is held to an even higher degree of responsibility in these matters than is required of all others. Above all else, a lawyer's fiduciary role requires that the lawyer act fairly in all dealings with the client. In that fiduciary role, a lawyer must provide the client with not only complete and undivided loyalty, but also with advice that will protect the client's interests. The foundation of the attorney-client relationship, like any fiduciary relationship, is trust and confidence. The client places trust and confidence in the attorney, expecting that the attorney will use his or her superior expertise, knowledge, training, and judgment for the client's benefit. A lawyer is never privileged to exercise an advantage which will in any respect prove detrimental to his client's interests . . . **We also must be mindful that lawyers typically prepare retainer agreements and that clients rely on the integrity of their lawyers who fashion the agreements.** In reviewing the fairness of a retainer agreement, a court may consider the circumstances related to the making of the agreement, including whether the parties actually negotiated the agreement, the client's level of sophistication or experience in retaining and compensating lawyers,' and other relevant factors. The attorney, however, bears the burden of establishing the fairness and reasonableness of the transaction given the special considerations inherent in the attorney-client relationship . . . One of the paramount duties of a lawyer is to make necessary disclosures to the client so that the client can make informed decisions. That duty is expressed in [R.P.C.] 1.4(c), which states that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

*Id*. at 267–269 (emphasis added) (citations, alterations, and quotations omitted). Similarly, in *Balducci,* the New Jersey Supreme Court explained that retainer agreements must satisfy "the professional ethical standards governing the attorney-client relationship" and "[t]he paramount principle guiding every fee arrangement is that a lawyer's fee shall be reasonable." 223 A.3d 1229, 1240 (N.J. 2020) (citations, alterations, and quotations omitted). Accordingly, lawyers have a "duty to explain a matter to the extent reasonably necessary to permit the client to make informed

decisions regarding the representation, and [are] forbidden from making false or misleading communications relating to legal fees." *Id.*

In ruling on an application for attorneys' fees where "it is clear that there is no evidence of overreaching by counsel" and plaintiffs "have been fully and completely informed of their rights," courts will typically uphold the fee arrangement as reasonable. *Butterly*, 2007 WL 1827200, at *4. However, the same cannot be said here. The Court cannot say that the conduct of the Law Firms in this case met their professional obligations to Plaintiffs with respect to the fee agreements and fees collected related to the McGough settlement or those sought in the First Student settlement, or that Plaintiffs were fully and completely informed. The Court cannot and will not ignore the circumstances of this case, and the facts make it clear that the overall requested fee by the Law Firms is simply unreasonable.

Indeed, in cases where a lawyer has violated their duty of loyalty to their client or their duty of candor to the court, attorneys' fees may be forfeited in their entirety. *Eagan*, 855 F. Supp. at 792. While the Court seriously considered such an outcome here with respect to both settlements, it will instead award what is objectively fair and reasonable under all of the circumstances, despite the conduct by the Law Firms. *See Estate of F.W.*, 942 A.2d at 58 ("When considering an application for a reasonable fee pursuant to Rule 1:21-7(c)(5), the trial court must exercise its discretion 'in light of all the circumstances.'").

Thus, as to the First Student settlement, the Court will award [REDACTED] in costs and $[REDACTED] in attorneys' fees. This amount is calculated by applying 15% to the First Student

settlement ($[redacted]), less permissible costs and expenses.[32] The Law Firms shall calculate the amount owed to Plaintiffs as to the First Student settlement, including the amount owed to each individual Plaintiff after deducting attorneys' fees and costs pursuant to their proportion of the settlement.

## CONCLUSION

In summary, in making its decision, the Court continually gave the Law Firms every benefit of the doubt, as officers of the Court, and a full and fair opportunity to fully explain and justify their conduct. After ten months, they have failed to do so, and the Court has no hesitation in its decision. There is no doubt that the Law Firms zealously represented their clients and obtained a favorable settlement, particularly given the potential risk that a jury would not find First Student liable. Regrettably, the favorable outcome and skilled advocacy is far overshadowed by the conduct of the Law Firms. And no amount of skill or advocacy is a substitute for ethics and professionalism.

For the foregoing reasons, the Law Firms' Motion for Attorney Fees is **GRANTED IN PART AND DENIED IN PART**. (ECF No. 334). The Court **GRANTS** the Law Firms' Motions to Seal. (ECF Nos. 360, 363, 366). An appropriate Order accompanies this Opinion.

Christine P. O'Hearn

**CHRISTINE P. O'HEARN**
**United States District Judge**

[32] As explained above, the two settlements must be aggregated pursuant to Rule 1:21-7(i). Because the amount recovered in the first settlement with McGough was in excess of $3,000,000, the Court's determination that 15% is a reasonable fee applies to the entirety of the First Student settlement.